2005 WY 151

**David A. BASDEN, Appellant
(Defendant),**

v.

**Carla J. COLE, Appellee (Plaintiff).**

**No. 05–45.**

Supreme Court of Wyoming.

Nov. 28, 2005.

Rehearing Denied Dec. 20, 2005.

Representing Appellant: C.M. Aron of Aron and Hennig, LLP, Laramie, Wyoming.

Representing Appellee: Richard W. Beckwith of Greenhalgh, Beckwith, Lemich, Stith & Cannon, P.C., Rock Springs, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, David A. Basden (Father), challenges an order of the district court which modified the custody of his Daughter so that Appellee, Carla J. Cole (Mother), is now the primary custodian, with Father having liberal visitation. Father contends that Mother failed to prove a material change in circumstances which warranted the modification of custody, and that the district court erred in relying on evidence from the guardian ad litem (GAL) that was not admitted at trial. We affirm.

**ISSUES**

[¶ 2] Father raises these issues:

1. Can a 14–year–old's unchanged preference to live with the noncustodial parent satisfy the statutory requirement for a material change of circumstances?

2. Is it reversible error for the trial court to rely on a GAL report that includes opinions that are, in effect, expert testimo-

ny, and relies on evidence outside the hearing?

Mother rephrases the issues in these terms:

I. Whether the district court properly considered the child's preference as one of many factors in making its decision to modify custody.

II. Whether the district court committed reversible error when it accepted closing arguments from the parties, including the guardian ad litem, in the form of written findings of fact and conclusions of law, following a trial on the merits.

## FACTS AND PROCEEDINGS

[¶ 3]   The parties were divorced by decree entered on May 12, 1998. The parties had three children: A son born September 17, 1986; a son born September 5, 1988; and a daughter born June 7, 1990. In the divorce decree, Father was awarded "sole legal custody" of the children, with Mother to have reasonable visitation.

[¶ 4]   On August 6, 2003, acting *pro se,* Mother filed a petition to modify custody with respect to Daughter. The basis for that petition was this:

6.   That since the most recent order/decree was entered there has been a significant and material change of circumstances to wit:

[Daughter], now the age of 13, has specified a preference to live with her mother, Carla J. (Basden) Cole for over a year. Last year [Daughter] wrote letters to the Department of Family Services and the Court requesting a change in the custody order as she did not feel safe in the custody of her father (who at the time had ... a drinking/driving incident during which time he drove off the road with the children, including [Daughter], in the vehicle). Since that incident, [Daughter] reports a lack of supervision by her father including a recent event at the beginning of July 2003, of [Daughter] leaving the house late in the evening with a girlfriend while her father who had been drinking alcohol and watching television was sleeping very soundly on the couch. [Daughter] and the girlfriend were picked up about 12:30am

that night by the Kemmerer police and returned to her father who told them "it's 9:30pm, you girls should be in bed." Additionally, [Daughter] lacks an adult female role model and confidant with whom she feels able to discuss menstrual cycles, changes inherent to puberty, dating questions, and other predominantly female issues. Her retired grandmother lives in Kemmerer, but [Daughter] and she do not share a close personal relationship, per [Daughter's] report. As to significant and material changes of circumstance in the mother, Carla J. (Basden) Cole, there have been many since the divorce judgment and decree dated May 12, 1998. Carla has a full-time job with Nocor in Pinedale, Wyoming where she has worked eleven months. She has lived in a nice home in a quiet residential neighborhood in Marbleton, Wyoming nearly four years. Carla married Bill Cole nearly two years ago. He has accepted all three of Carla's children as his own (he does not have children of his own) and has developed a comfortable relationship with them in which he is a respected parental figure and enjoys recreation activities with them including bicycling, basketball, volleyball, traveling, and barbeques. Additionally, Bill is employed full-time where he has worked for the past 30 years.

In summary, I, Carla J. Cole, believe I am capable financially and emotionally of caring for [Daughter] and believe that at this critical stage in her development into a young woman, I am better able to identify with her needs and the changes she faces than her father.

[¶ 5]   On August 25, 2003, Father filed a reply and counter-petition, asking that the district court dismiss Mother's petition, that Mother pay additional child support, as well as arrears on her obligation to pay one-half of uncovered medical expenses, and that Mother pay his attorney's fees. Mother responded, indicating that she paid more in child support than was alleged by Father in his reply and counter-petition, that no request for her to pay uncovered medical expenses had ever been made of her, and that the parties should each bear their own re-

spective attorney's fees. A GAL was appointed to represent the best interests of Daughter.

[¶ 6] A hearing was held on October 29, 2004, and testimony was heard from Father, Mother, Daughter, Mother's current spouse, and Jerry Penny, a social worker and child custody expert called as a witness by Father. Penny's testimony was not directed at this particular case, and he did not meet with Daughter. His testimony was limited to his general expertise with respect to "adolescent and custody issues." The GAL did not call any witnesses. At the close of the hearing, the district court decided not to hear closing arguments and gave these directions to the GAL:

> THE COURT: All right. Let me suggest something here. I would like your recommendation. If you want to put it in the form of findings of fact and conclusions of law, that's fine, or you can submit your recommendation, but it does need to be based on the evidence produced here in court.

[¶ 7] The parties agreed to submit proposed findings of fact and conclusions of law to the district court two weeks later. The record reflects that all parties did submit such findings and conclusions. On December 29, 2004, the district court issued its order granting Mother's petition to regain custody of Daughter. Father's notice of appeal was filed on January 25, 2005.

## STANDARD OF REVIEW

[¶ 8] A decision such as that which is challenged here is guided by Wyo. Stat. Ann. § 20–2–204(c) (LexisNexis 2005):

> (c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow

visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances.

[¶ 9] In the process of considering a modification of child custody, the district court must also be attentive to the requirements found in Wyo. Stat. Ann. § 20–2–201 (LexisNexis 2005):

> (a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14–2–401 through 14–2–907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>
> (i) The quality of the relationship each child has with each parent;
>
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>
> (iii) The relative competency and fitness of each parent;
>
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
>
> (vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
>
> (vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
>
> (viii) Geographic distance between the parents' residences;
>
> (ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

(b) In any proceeding in which the custody of a child is at issue the court shall not prefer one (1) parent as a custodian solely because of gender.

(c) The court shall consider evidence of spousal abuse or child abuse as being contrary to the best interest of the children. If the court finds that family violence has occurred, the court shall make arrangements for visitation that best protects the children and the abused spouse from further harm.

(d) The court shall order custody in well defined terms to promote understanding and compliance by the parties. Custody shall be crafted to promote the best interests of the children, and may include any combination of joint, shared or sole custody.

(e) Unless otherwise ordered by the court, the noncustodial parent shall have the same right of access as the parent awarded custody to any records relating to the child of the parties, including school records, activities, teachers and teachers' conferences as well as medical and dental treatment providers and mental health records.

(f) At any time the court may require parents to attend appropriate parenting classes, including but not limited to, parenting classes to lessen the effects of divorce on children.

[¶ 10] In *JRS v. GMS*, 2004 WY 60, ¶¶ 10–11, 90 P.3d 718, 723 (Wyo.2004), we provided this guidance:

In custody matters, the welfare and needs of the children must be given paramount consideration. That which is in the best interests of the child is a question for the trier of fact, and we will not overturn the decision of a trial court unless we are persuaded that an abuse of discretion is present or that there has been a violation of some legal principle. *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998). When we are asked to review the action of a district court, in the context of the abuse of discretion standard, the core of the inquiry we must make is the question of the reasonableness of the choice made by the trial court. Judicial discretion is a composite of many things. Among these are conclusions drawn from objective criteria. It means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We must ask whether or not the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Cobb v. Cobb*, 2 P.3d 578, 579 (Wyo.2000) (quoting *Thomas v. Thomas*, 983 P.2d 717, 719 (Wyo.1999)). The party seeking to modify established child custody provisions of a divorce decree has the burden of showing that a material change in circumstances that affects the child's welfare occurred subsequent to the entry of the initial decree, that the change warrants modification of the decree, and that the modification will be in the best interests of the affected child. *Cobb*, 2 P.3d at 579–80 (quoting *Sorensen v. May*, 944 P.2d 429, 432 (Wyo.1997)).

A child's preference as to custody may be considered by the trial court:

In determining the weight to be given a child's preference several factors should be considered: the age of the child; the reason for the preference; the relative fitness of the preferred and non-preferred parent; the hostility, if any, of the child to the non-preferred parent; the preference of other siblings; and whether the child's preference has been tainted or influenced by one parent against the other.

Although custodial preference is not conclusive, the court here was entitled to give more consideration to a fifteen-year old girl's preference than say, the preference of a six-year old child.

*Yates v. Yates*, 702 P.2d 1252, 1256 (Wyo. 1985).

## DISCUSSION

**Material Change in Circumstances**

[¶ 11] The focus of Father's first issue is that Mother asserted as the centerpiece of her petition that Daughter had

expressed a preference for living in the primary custody of her Mother. Father's contention is that that circumstance cannot be viewed as a material change because from the outset of the divorce proceedings in 1998, Daughter had expressed a preference for living with Mother—i.e., it was nothing new. Mother's response to that contention is that, although Daughter had always expressed a preference to live with her, it had changed in intensity (was ever stronger) and it had changed in nature (from wishing to be with her traditional at-home parent, to needing the guidance and counsel of her mother as she entered puberty). Father further contends that the district court essentially skipped over the threshold question of whether there was a material change in circumstances and went directly to the question of what was in the best interests of the child, and it did so in the face of a total lack of objective evidence that would support a conclusion of law that a material change in circumstances was present.

[¶ 12] A secondary argument in this regard is that the district court mistakenly relied on improvements in Mother's abilities to parent and provide for Daughter, i.e., she had mended her ways, was gainfully employed, had the means to support Daughter, had remarried, was living in a nice home, etc. Father contends that merely because Mother had improved, whereas Father had a steady and consistent record as being a responsible parent, that cannot serve as the basis for a conclusion that a material change in circumstances warranted his loss of custody of Daughter.

[¶ 13] The conclusion of this argument was articulated like this in Father's brief: "In simple terms, it is an abuse of discretion to find a change in material circumstances when nothing has happened except that a bad parent started acting like a normal parent and a child continued to express the same preference."

[¶ 14] However, we are compelled to conclude that Father's argument skips several steps in the applicable reasoning process and our professed analytic method. We begin by noting that, according to the testimony of the child, her professed preference to be in her Mother's custody was the end result of many factors, and that preference had grown more urgent over the passage of time. Daughter's need for Mother in her day-to-day life had increased as she matured into her teenage years. She was increasingly uncomfortable living in a household with three males, in particular sharing a single bathroom with them. She was not close to her brothers (although the eldest was about to leave home for college), and she was skeptical of Father's parenting abilities because of his tendency toward anger, his consumption of alcohol, and his verbal abuse of her.

[¶ 15] In counterpoint, Daughter felt close to Mother and was more comfortable in her home. She also felt she could talk to Mother about things that she could not talk about with Father. Daughter felt bad when Father said Mother was not a good parent because she "would sleep with other guys." Father also called Mother a "stupid woman," derided Mother's lack of education, and indicated Mother "did not know what she was talking about," in front of Daughter. Daughter was also concerned that Father refused Mother's overture that the two parents "try to be friends."

[¶ 16] In addition, we decline to view Mother's testimony that she had improved her life as irrelevant and prejudicial to Father because he had always been a responsible parent. It is apparent that the district court viewed Father as the more fit of the two parents at the time the divorce was granted. The record also reflects that the district court viewed the custody arrangements as a tough decision when it was made in 1998. However, that was affected to some extent because Mother had been a stay-at-home mom, was not employed, had no income or assets, and had run off with another man. We conclude these circumstances are relevant to a determination of a material change in circumstances. However, the standard is not one that even a good parent must improve to retain custody, but rather at the time of the hearing on modification it was relevant that both parents were then fit and proper persons to have custody and, in light

of that, what was in the best interests of Daughter.[1]

[¶ 17] After a comprehensive consideration of all these facts and circumstances taken together, and in light of Daughter's strongly expressed preference to live with Mother, we conclude that the district court did not abuse its discretion in finding that a material change in circumstances existed and by awarding primary custody to Mother. Moreover, it is evident from the record that, in making this difficult decision, the district court considered and weighed all of the relevant factors applicable to an award of child custody under § 20–2–201(a) (including the separation of siblings), as well as the factors applicable to the consideration of a child's preference as set out in *Yates*.

### District Court's Reliance on Non–Record Evidence from GAL

[¶ 18] We have held that a GAL may not be a fact witness in cases such as the one at bar. In addition, we have held that attorneys who serve as GALs and also appear as a witness in that same matter commit an ethical violation. Father contends that just such a situation arose here because, in her proposed findings of fact and conclusions of law, the GAL included facts that were not developed at trial or otherwise on the record. *Robbins v. Robbins*, 2002 WY 80, ¶¶ 6–10, 46 P.3d 880, 882–83 (Wyo.2002); *also see Clark v. Alexander*, 953 P.2d 145 (Wyo.1998), and *Pace v. Pace*, 2001 WY 43, 22 P.3d 861 (Wyo.2001).

[¶ 19] Of course, we would like to see errors of this sort disappear entirely from proceedings such as this, but we also said in *Robbins*, ¶¶ 8–10, 46 P.3d at 882–83:

> *Clark* also stands for the proposition that such an ethical violation not instigated by the prevailing party would not require reversal unless it somehow resulted in a manifest injustice.

In *Moore* [*v. Moore* ], 809 P.2d [255,] 264 [(Wyo.1991)], we held that an ethical violation, not brought about by the prevailing party, will be reversed only if it resulted in manifest injustice. In many district courts, it is not uncommon to allow the testimony of an attorney/guardian ad litem. Thus, in the absence of objection to the district court, we cannot say that the prevailing party in this case was responsible for the ethical violation. Therefore, we must determine whether the admission of the attorney/guardian ad litem's testimony and reports, as well as the tape recordings, resulted in manifest injustice under the totality of the circumstances. *Moore*, 809 P.2d at 264.

> Manifest injustice "contemplate[s] a situation that is unmistakable or indisputable, was not foreseeable, and affects the substantial rights of a party." *McCarthy v. State*, 945 P.2d 775, 777 (Wyo.1997).

*Id.*

In this case, the mother cannot identify how the GAL's testimony created any injustice. It was certainly foreseeable that the trial court might consider the GAL's recommendation persuasive. That recommendation was already before the court in the form of the GAL's report, the admission to which the mother had stipulated. The parties introduced other substantial evidence, including testimony by both parents, that supported the trial court's conclusion the father was the more stable parent. At the hearing on the motion for a new trial, the trial court commented that the GAL's testimony actually convinced him in the mother's favor and dissuaded him from awarding full custody to the father. Finding no hint of injustice, we perceive no reason to reverse the trial court's ruling on permanent custody.

An additional comment is in order. To the extent error occurred in this case, it is

---

1. In presenting this issue, Father also places great emphasis on Mother's, new husband's admission that, more than 30 years ago, he sexually abused his seven or eight year old niece at a time when he was sixteen or seventeen years old and that no such incident had ever recurred since.

The district court made detailed findings on this matter, and we will not question the weight it assigned to that matter in its decision. *See Pahl v. Pahl*, 2004 WY 40, ¶ 11, 87 P.3d 1250, 1254 (Wyo.2004).

difficult to conceive of a more apparent example of invited error. These parties stipulated the GAL's report could be submitted to the trial court. They were fully aware of the cases addressing the propriety of attorney GALs testifying. The mother's counsel had actually argued in Pace, which was then pending before this court, that prior case law prevented the GAL from testifying. The GAL herself was well informed of the limitations on her role. Yet they all agreed to a procedure which allowed the GAL to testify. Now, having obtained a result that was fairly predictable—the trial court followed the GAL's recommendation—the mother and her counsel cry foul and seek another time at bat. We are decidedly unpersuaded. "[I]f a party requests or moves the court to make a ruling which is actually erroneous and the court does so, that party cannot take advantage of the error on appeal or review." *Mayland v. Flitner,* 2001 WY 69, ¶ 44, 28 P.3d 838, ¶ 44 (Wyo.2001).

[¶ 20] Father complains that the GAL prefaced her findings of fact with statements that: She spoke with several persons who did not appear at trial; she reviewed reports from the Department of Family Services relating to Father and those reports also were not in the record; Father had not talked with Daughter about what she could expect when she had her first period (the record is actually silent in this regard); it was her opinion that Daughter's psychological needs had changed (an unqualified opinion without foundation and without opportunity to cross-examine); the stepfather was not a danger to Daughter; and Mother considered it important that Daughter maintain a relationship with her brothers (Mother did not so testify).

[¶ 21] As good a place as any to start our discussion of this issue is to note that all parties agreed to a simultaneous submission of findings of fact and conclusions of law. Lapses such as those called to our attention by Father are unfortunate, but understandable, when such a methodology is used prior to the preparation of a transcript. We also note that Father made no post trial motion asking the district court to correct its oversight(s). We note that some of the material

to which Father objects is not "evidence," but it is reasonable to say that it suggests the existence of "evidence." However, based on the evidence, it is reasonable to conclude that Father had not talked to Daughter about menstrual cycles or her period (Daughter testified she could not talk to Father about it). Also, we think it a sound conclusion that the district court might have deduced that Daughter's psychological needs had changed based upon the expert testimony of Jerry Penny, who Father called as a witness. Granted, Penny did not purport to speak directly about Daughter, but rather his testimony was presented for its general applicability to teenage girls in these circumstances. It seems fair enough to conclude that it appeared to apply to Daughter, in light of all the other evidence presented. The district court might well have concluded from all of the evidence presented (especially Mother, stepfather, and Daughter) that stepfather was not a "danger" to Daughter, even though no witness used those exact words. It is apparent that Mother did not say the specific words that the sibling relationships were important, but certainly her testimony evinced a continued interest in all the children being together as much as possible. If there was error at all, it certainly did not arise to a manifest injustice or otherwise mandate reversal.

### CONCLUSION

[¶ 22] We find no error in the proceedings below either with respect to the district court's conclusion that there was a material change in circumstances or that it was in the best interests of the child to be in Mother's custody. Any excess material contained in the GAL's submission to the district court and included in the final order did not constitute a manifest injustice under the circumstances of this case and does not require reversal. The order of the district court is, therefore, affirmed.