# THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 48

APRIL TERM, A.D. 2023

May 24, 2023

ANDREA M. KELLY,

Appellant
(Plaintiff),

v.

S-22-0262

MITCHELL C. KELLY,

Appellee
(Defendant).

*Appeal from the District Court of Albany County*
*The Honorable Suzannah G. Robinson, Judge*

*Representing Appellant:*
    Sean W. Scoggin of Williams, Porter, Day & Neville, P.C., Cheyenne, Wyoming.

*Representing Appellee:*
    Stacy L. Rostad of Rostad Law, LLC, Laramie, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    The district court granted Mitchell Kelly's (Father) petition to modify a child custody order after Andrea Kelly (Mother) moved to Tennessee with the parties' daughter. The district court awarded Father custody of the child during the school year, with Mother having custody of the child during summers and most school breaks. Mother claims the district court abused its discretion when it modified custody. We affirm.

## ISSUE

[¶2]    The sole issue in this case is whether the district court abused its discretion when it modified custody.

## FACTS

[¶3]    The parties were married in Knoxville, Tennessee, on August 21, 2012. Sometime after their marriage, the parties moved to Laramie, Wyoming. The parties' daughter, AFK, was born in Laramie, Wyoming, in 2014. The parties were divorced via a *Stipulated Final Decree of Divorce* (*Stipulated Decree*) on December 15, 2020. Although the *Stipulated Decree* awarded Mother primary physical custody of AFK, Father had custody of AFK at least 10 nights every month.

[¶4]    In May 2021, approximately five months after the *Stipulated Decree* had been entered, Mother notified Father and the district court she intended to move to Tennessee with AFK in July 2021. In June 2021, Father asked the district court to enter an ex parte restraining order prohibiting Mother from removing AFK from Wyoming and awarding him temporary custody of AFK. The district court denied this request. Father also filed a petition to modify custody, visitation, and support. Father alleged Mother's proposed move to Tennessee was a material change in circumstances, and he asked the district court to award him primary physical custody of AFK. In her response, Mother admitted her move was a material change in circumstances. However, she alleged she had been the child's primary caregiver since birth, and it was in AFK's best interest for Mother to remain the child's primary physical custodian.

[¶5]    The district court held a bench trial on Father's petition in February 2022. Both parties testified Father and AFK are very close. Prior to the divorce, Father was primarily responsible for dropping AFK off at school and picking her up. After the divorce and before the move, whoever had custody of AFK on that day would drop her off at school and pick her up. Prior to Mother's move, Father was actively involved in all aspects of parenting AFK, including getting her ready for school, fixing meals, taking her to activities, and helping her with her homework.

[¶6]     Mother first informed Father of her intention to relocate in an email.  Mother knew the move would decrease Father's visitation with AFK.  Father told Mother he did not believe the move was in AFK's best interest.  Despite Father's concerns, Mother unilaterally decided to move the child to Tennessee.  After the move, Father had visitation with AFK twice in Wyoming.  Father also traveled to Tennessee at least twice to have visits with AFK while she was staying with her paternal grandparents.  Most of their contact has been by phone or video chat.

[¶7]     Father, Mother, and AFK's paternal grandmother all testified the move to Tennessee has been difficult for AFK.  According to her paternal grandmother, AFK was a happy, outgoing, and personable child when she lived in Wyoming.  Since the move, AFK has not been the same child, and she frequently cries because she misses Father.  On one occasion after Father returned to Wyoming from visiting AFK at her paternal grandparents' home in Tennessee, AFK cried for 10 hours and only stopped crying after vomiting.

[¶8]     Father testified the move had not been good for AFK, and it had put a lot of stress on her.  Before the move, AFK was more of a free spirit and a happier child.  Father testified when AFK came to Wyoming for visits, she was initially happy and enjoyed being home.  However, the last couple of days of the visits were difficult because AFK became emotional, cried during the ride to the airport, and did not want to get on the plane.  Mother admitted AFK has been emotional and gets sad when she misses Father.  Although Mother thought about enrolling AFK in therapy to help her cope with her emotions, she had not yet done so, and she had not talked to Father about this issue.

[¶9]     Mother is employed by the University of Wyoming as an accountant, and she has been working remotely since April 2020.  Mother's schedule now allows her to get AFK up and ready for school and be home when AFK arrives back home from school every day.  Mother's primary reason for moving to Tennessee was to care for her mother, who was suffering from Stage 4 kidney failure.  Mother's secondary reason for moving was to be closer to her support system.  Both parties have family who reside in Tennessee.  Mother has no intention of moving back to Wyoming, and Father has no intention of moving to Tennessee.

[¶10]   In March 2022, the district court issued a detailed decision letter.  The district court found a material change in circumstances had occurred, and most of the visitation provisions set forth in the *Stipulated Decree* could not be followed after Mother's move to Tennessee.  The district court then considered the mandatory best interest factors set forth in Wyoming Statute § 20-2-201(a) (LexisNexis 2021) and other factors found in caselaw, including primary caregiver status, when deciding if a change of custody was in AFK's best interest.  After considering these factors, the district court found custody and visitation should be modified.  Specifically, the district court found:

> [AFK] should be able to spend as much time as possible with

2

both parents because she is close to both parents and loves them both very much. This will minimize, to the extent possible, the negative impact of being physically separated from each parent for extended periods of time. The Court is unable to order [AFK] spend equal time with both parents. The Court is only able to maximize as much time as possible with both parents by ordering [AFK] live with Father in Wyoming. This is because the school system in Wyoming provides more time off in the summer (even when adding the Tennessee Fall break, Wyoming schools provide more summer and holiday time off), and because Mother's work schedule is more accommodating and flexible than Father's. This will provide opportunities for Mother and [AFK] to spend additional time together. Father's work does not provide him with the flexibility to travel to Tennessee to visit [AFK] during work weeks. Mother's work allows her to work from any location, which would allow her to visit [AFK] in Wyoming, provided she can make temporary arrangements for her own mother's care.

The district court found AFK should reside with Father during the school year and with Mother during summers and most school breaks. The district court issued an order incorporating its decision letter in June 2022. This appeal timely followed.

## STANDARD OF REVIEW

[¶11] "We review a district court's child custody modification ruling for an abuse of discretion." *Lackey v. Lackey*, 2022 WY 22, ¶ 22, 503 P.3d 92, 96 (Wyo. 2022) (quoting *Gutierrez v. Bradley*, 2021 WY 139, ¶ 15, 500 P.3d 984, 988 (Wyo. 2021)). "[W]e consider the evidence in the light most favorable to the district court's decision, 'affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.'" *Taulo-Millar v. Hognason*, 2022 WY 8, ¶ 15, 501 P.3d 1274, 1279 (Wyo. 2022) (quoting *Bishop v. Bishop*, 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017)). "The burden is on the party asserting an abuse of discretion to establish such an abuse." *Id.* at 1280 (quoting *Aragon v. Aragon*, 2005 WY 5, ¶ 21, 104 P.3d 756, 762 (Wyo. 2005)).

## DISCUSSION

[¶12] "Under [Wyoming Statute] § 20-2-204(c) (LexisNexis 2021), a court can 'modify an order concerning the care, custody and visitation of the child if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the child pursuant to [Wyoming

Statute] § 20-2-201(a)." *Gardels v. Bowling*, 2023 WY 3, ¶ 8, 522 P.3d 1047, 1052 (Wyo. 2023). This statute creates a two-step process where the district court must first decide whether there has been a material change in circumstances. *Id.* (citing *Jacobson v. Kidd*, 2018 WY 108, ¶ 16, 426 P.3d 813, 820 (Wyo. 2018)). "The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of a substantial or material change of circumstances which outweighs society's interest in applying the doctrine of res judicata to a custody order." *Id.* (quoting *Jacobson*, ¶ 16, 426 P.3d at 820). If the district court finds there has been a material change in circumstances, it moves to the second step of the process "which requires it to determine, based on the totality of the evidence, whether modification of the custody or visitation order would be in the child's best interests." *Id.* (citing *Gutierrez*, 2021 WY 139, ¶ 23, 500 P.3d at 989–90; *Johnson v. Clifford*, 2018 WY 59, ¶ 11, 418 P.3d 819, 823 (Wyo. 2018); *Bishop*, 2017 WY 130, ¶ 11, 404 P.3d at 1173). "A material change in circumstances does not automatically warrant a change in custody." *Ianelli v. Camino*, 2019 WY 67, ¶ 27, 444 P.3d 61, 68 (Wyo. 2019) (citing *Jensen v. Milatzo-Jensen*, 2013 WY 27, ¶ 12, 297 P.3d 768, 773 (Wyo. 2013); *Arnott v. Arnott*, 2012 WY 167, ¶ 41, 293 P.3d 440, 458 (Wyo. 2012)). "Instead, 'custody must be arranged so as to be in the best interests of the child[] on an individualized basis.'" *Id.* (citing *Jensen*, ¶ 12, 297 P.3d at 773).

[¶13] Mother asserts the district court abused its discretion when it ordered shared physical custody, terminated her role as the primary custodial parent, and severely limited her time with the child.[1] She asserts she should have remained the primary physical custodian of the child, and the district court should have modified Father's visitation to coincide with the child's school schedule. Father asserts the district court never found Mother was the child's primary caregiver, and in fact found they shared these duties prior to Mother's move. He also asserts although primary caregiver status is a weighty factor, it is not always determinative, and the district court properly considered this factor when making its decision.

[¶14] When deciding if a custody modification is in the best interests of the child, the district court must consider the factors set forth in Wyoming Statute § 20-2-201(a). Wyo. Stat. Ann. § 20-2-204(c). "The district court must consider both statutory and non-statutory factors when exercising its discretion to devise a custody arrangement in the best interests of the child." *Ianelli*, ¶ 27, 444 P.3d at 68. "'No single factor is determinative,' and 'depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the child's best interests.'" *Taulo-Millar*, 2022

---

[1] Mother also asserts the district court never explicitly found it was in AFK's interest that Father be the custodial parent of the child. Unless a party makes a request for findings of fact under Rule 52(a)(1)(A) of the Wyoming Rules of Civil Procedure, it is not "necessary for the court to state its findings, except generally for the plaintiff or defendant." *Kimzey v. Kimzey*, 2020 WY 52, ¶ 38, 461 P.3d 1229, 1241 (Wyo. 2022). Because neither party asked for findings under Rule 52(a)(1)(A), the district court was only required to find generally for Father. *Id.*

4

WY 8, ¶ 21, 501 P.3d at 1281 (quoting *Martin v. Hart*, 2018 WY 123, ¶ 21, 429 P.3d 56, 63 (Wyo. 2018)).

[¶15]  "[W]e have acknowledged that a change of a child's primary custodian/caregiver is a 'weighty matter' that 'raises concern about relationship stability and security for the child.'" *Gardels*, 2023 WY 3, ¶ 25, 522 P.3d at 1056 (quoting *Johnson*, 2018 WY 59, ¶ 12, 418 P.3d at 823; *Martin*, ¶ 22, 429 P.3d at 64).  "A child's primary caregiver is 'the parent who is primarily responsible for the hands-on, day-to-day care of the child.'" *Gardels*, ¶ 26, 522 P.3d at 1057 (quoting *Williams v. Williams*, 2016 WY 21, ¶ 21, 368 P.3d 539, 546 (Wyo. 2016), *overruled on other grounds by Bruegman v. Bruegman*, 2018 WY 49, 417 P.3d 157 (Wyo. 2018)).  While we have "recognized that a child is almost always harmed when [she] is taken from the parent who had been the primary nurturer[,]" we have also noted "[t]hat concern is of less importance when modifying a joint custody arrangement because one parent has not been designated as the child's primary nurturer." *Johnson*, ¶ 12, 418 P.3d at 823 (citing *Gurney v. Gurney*, 899 P.2d 52, 54 (Wyo. 1995)).  Further, we have found "primary caregiver status is not determinative; it is one of many factors considered in determining the child's best interests." *Gardels*, ¶ 25, 522 P.3d at 1056 (citing *Pahl v. Pahl*, 2004 WY 40, ¶¶ 13–14, 87 P.3d 1250, 1254–55 (Wyo. 2004)).  "Under the unique facts of a case, other factors may outweigh a party's primary caregiver status." *Id.* (citing *Pahl*, ¶¶ 13–14, 87 P.3d at 1254–55).

[¶16]  The district court considered the primary caregiver factor and found the parties shared the role of primary nurturer.  The evidence presented at trial showed Father provided more daily care for AFK than Mother during the marriage.  After the divorce and prior to the move, Father was AFK's primary caregiver at least 10 days each month.  Only after Mother's move did she become AFK's primary caregiver.  Because neither party had been AFK's primary nurturer since birth, this is one of those cases where the primary caregiver factor is of less importance. *See Johnson*, 2018 WY 59, ¶ 12, 418 P.3d at 823 (citing *Gurney*, 899 P.2d at 54).

[¶17]  In addition, there were other considerations in this case that outweighed any concerns about changing primary custody of AFK.  As the district court noted, all the witnesses agreed the move to Tennessee negatively impacted AFK.  We have recognized "[s]tability is of the 'utmost importance to a child's well-being.'" *Gardels*, 2023 WY 3, ¶ 15, 522 P.3d at 1054 (quoting *Womack v. Swan*, 2018 WY 27, ¶ 14, 413 P.3d 127, 134 (Wyo. 2018)).  The district court found: "It was clear to the [c]ourt, however, that [AFK] fared relatively well under the original custody and visitation schedule[] and has not been faring as well with limited visitation with Father since moving."  The district court further found AFK had been negatively affected by the lack of time spent with Father.

[¶18]  "A child has a right to have a relationship with both of her parents, and when one parent undermines the other parent's relationship with the child, it is contrary to the child's welfare." *Gardels*, 2023 WY 3, ¶ 11, 522 P.3d at 1053 (quoting *Bishop*, 2017 WY 130,

5

¶ 19, 404 P.3d at 1176). During the trial, Mother indicated she thought AFK's in-person visits with Father should start with one month in the summer and gradually increase to more in future years. The district court was concerned Mother thought Father's time with AFK "should be anything less than the maximum time possible, considering the extreme limitations Mother's move ha[d] placed on [AFK]'s and Father's relationship." The district court found this weighed in favor of Father.

[¶19] The district court was clearly aware spending less time with Mother would likely negatively impact AFK. For this reason, the district court attempted to craft a visitation schedule that allowed the child to spend as much time as possible with each parent. To accomplish this goal, the district court found AFK should reside with Father during the school year and with Mother during summers and school breaks. The district court recognized Wyoming's school calendar allowed for more visitation than Tennessee's, and Mother's work schedule gave her the flexibility to travel to visit AFK in Wyoming during the school year. The district court discussed creating a more traditional shared custody arrangement, but it found that was impossible due to the geographic distance between the parties' homes. The district court considered all the statutory and non-statutory best interest factors, including primary caregiver status, and it found it was in AFK's best interest to modify custody. When viewed in accordance with our standard of review, the record contains ample evidence to support the district court's findings.

## CONCLUSION

[¶20] The district court did not abuse its discretion when it granted Father's petition to modify custody. Affirmed.