# THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 10

OCTOBER TERM, A.D. 2024

January 23, 2025

WESLEY WADE BRINDA,

**Appellant**
**(Plaintiff),**

**v.**                                               S-24-0121

STACEY JOLEE WALKER,

**Appellee**
**(Defendant).**

*Appeal from the District Court of Campbell County*
*The Honorable James Michael Causey, Judge*

*Representing Appellant:*
    *Michael Stulken of Stulken Law, P.C., Newcastle, Wyoming.*

*Representing Appellee:*
    *Kathryn J. Edelman of Edelman Law Office, Gillette, Wyoming.*

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    Appellant, Wesley Brinda (Father), petitioned for a custody modification, seeking to modify the current custodial arrangement from primary residential custody with Appellee, Stacey Walker (Mother), to shared residential custody.  Mother counter-petitioned and sought to modify child support.  After a two-day bench trial, the district court found there was no material change in circumstances that justified re-opening the current custodial order but modified the current child support order.  Father limits his appeal to the district court's custody decision.  We affirm.

## ISSUE

[¶2]    Father presents a single issue which we rephrase as follows: Did the district court abuse its discretion when it determined no material change of circumstances occurred?

## FACTS

[¶3]    The parties were divorced on February 13, 2015.  The district court awarded the parties joint legal custody with Mother having primary residential custody of the parties' children, AB and KB.  At the time of the entry of the decree, Father worked for a coal mine on a 28-day work schedule.  Father worked a rotating schedule, which gave him certain days off.  The district court based the custodial arrangement on his work schedule.  The custodial arrangement gave Father time with the children on Friday, Saturday, and Sunday during the week he had a weekend off from work, and then Friday until Tuesday morning during the week he had seven days off from work.  The district court also awarded Father visitation with the children on Wednesday after school until 6:30 p.m. on the days Father "ha[d] three days off in the middle of the week."  Father and Mother were also both awarded certain holidays and time during the summer.  The district court awarded Mother child support.

[¶4]    In approximately 2016, Father was laid off from the coal mine and began his own business as a residential contractor, which allowed him the flexibility of making his own work schedule.  Sometime shortly thereafter, in 2017, Father filed a petition to modify child support, which the district court granted.  At that time, Father did not request to modify child custody.

[¶5]    On November 30, 2021, Father filed a petition to modify custody.  He requested to modify the custodial arrangement to a "shared custody arrangement . . . so that the parties are allowed approximately equal parenting time with the minor children."  Father stated since the entry of the decree there had been a material change in circumstances warranting a modification of the custodial provisions of the decree. Specifically, Father argued he no longer worked the rotating schedule and is self-employed.  He claimed his new work schedule allowed him more flexibility to spend time with the children than when the decree

1

was entered. He also argued the children expressed a desire to have more time with him. Essentially, he argued the children wished to spend equal amounts of time with their respective parents. Father also claimed Mother was unwilling to co-parent with him as to parenting time with the minor children.

[¶6] Mother filed a counterpetition. She generally denied there were sufficient grounds to modify the custodial order. However, she asserted the district court should review the current child support order.

[¶7] The district court held a two-day bench trial. The district court denied Father's petition and held no material change in circumstances had occurred since the entry of the decree to modify child custody. The district court granted Mother's counterpetition and modified child support. Father timely appealed the district court's order regarding child custody.

## STANDARD OF REVIEW

[¶8] "We review a district court's child custody modification ruling for an abuse of discretion." *Kelly v. Kelly*, 2023 WY 48, ¶ 11, 529 P.3d 494, 497 (Wyo. 2023) (quoting *Lackey v. Lackey*, 2022 WY 22, ¶ 22, 503 P.3d 92, 96 (Wyo. 2022)). We will not overturn the district court's decision absent an abuse of discretion or a violation of a legal principal. *Gardels v. Bowling*, 2023 WY 3, ¶ 7, 522 P.3d 1047, 1052 (Wyo. 2023) (citing *Meehan-Greer v. Greer*, 2018 WY 39, ¶ 14, 415 P.3d 274, 278–79 (Wyo. 2018)). "A court abuses its discretion if it acts 'in a manner which exceeds the bounds of reason under the circumstances.'" *Id.* (quoting *Meehan-Greer*, ¶ 14, 415 P.3d at 278–79).

[¶9] The district court's decision in a child custody modification "concerning a material change in circumstances is principally a factual determination to which we accord great deference." *Kappen v. Kappen*, 2015 WY 3, ¶ 11, 341 P.3d 377, 381 (Wyo. 2015) (quoting *Morris v. Morris*, 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo. 2007)). Our primary goal is to determine "whether the district court's decision is reasonable." *Smith v. Kelly*, 2019 WY 60, ¶ 20, 442 P.3d 297, 301 (Wyo. 2019) (quoting *Kappen*, ¶ 10, 341 P.3d at 381). In determining whether the decision was reasonable, we view the evidence "in the light most favorable to the district court's decision, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence." *Kelly*, 2023 WY 48, ¶ 11, 529 P.3d at 497–98 (quoting *Taulo-Millar v. Hognason*, 2022 WY 8, ¶ 15, 501 P.3d 1274, 1279 (Wyo. 2022)); *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018). We afford the district court's credibility determinations considerable deference, and we will not set aside those determinations merely because we may have reached a different result. *Johnson*, ¶ 8, 418 P.3d at 822–23 (quoting *Drake v. McCulloh*, 2002 WY 50, ¶ 18, 43 P.3d 578, 584 (Wyo. 2002)).

## DISCUSSION

[¶10]  "Either parent may petition to . . . modify any court order regarding custody and visitation." Wyo. Stat. Ann. § 20-2-204(a) (LexisNexis 2021).  "A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a)." Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2021).  The district court applies a two-step process in child custody modifications where it "must first decide whether there has been a material change in circumstances." *Kelly*, 2023 WY 48, ¶ 12, 529 P.3d at 498 (citing *Gardels*, 2023 WY 3, ¶ 8, 522 P.3d at 1052).  "The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of a . . . material change of circumstances which outweighs society's interest in applying the doctrine of res judicata to a custody order." *Id.* (quoting *Gardels*, ¶ 8, 522 P.3d at 1052).  "If the district court finds there has been a material change in circumstances, it moves to the second step of the process 'which requires it to determine, based on the totality of the evidence, whether modification of the custody or visitation order would be in the child's best interests.'" *Id.* (quoting *Gardels*, ¶ 8, 522 P.3d at 1052).

[¶11]  The party seeking to modify custody must show a material change in circumstances affecting the child's welfare has occurred. *Kappen*, 2015 WY 3, ¶¶ 11, 14, 341 P.3d at 381–82.  To be considered material and justify reopening the custody order, the change in circumstances must have some relevance in the child's life. *ELA v. AAB*, 2016 WY 98, ¶ 13, 382 P.3d 45, 49 (Wyo. 2016); *Cook v. Moore*, 2015 WY 125, ¶ 16, 357 P.3d 749, 754 (Wyo. 2015) (quoting *Kappen*, ¶ 15, 341 P.3d at 382).  Here, the district court found Father did not establish a material change in circumstances that affected the welfare of the children to justify re-opening the custody order.  Father argues the district court erred.  He claims the district court improperly considered the preferences of the minor children, his ability to be more accessible to the children with his career change, and the parties' inability to co-parent.  Additionally, Father claims the district court improperly applied precedent on res judicata regarding issues of child custody.

## I. Material Change in Circumstances

### A. Child Preferences

[¶12]  Father first contends the district court "did not properly take into consideration the preferences of the minor children" when it determined there was no material change in circumstances.  He argues the district court's "findings [are] silent as to how the ages of the minor children effected their preference to spend more time with [him]."  He also claims the district court dismissed AB's reasonings for wanting to spend more time with him.

[¶13]  A child's preference, even if unchanged from the entry of the custody order, taken together with other facts and circumstances, may be considered a material change in

3

circumstances. *Basden v. Cole*, 2005 WY 151, ¶¶ 11–17, 123 P.3d 566, 569–71 (Wyo. 2005). "A trial judge may take the preferences of a child whose custody is disputed into consideration[.]" *Walker v. Walker*, 2013 WY 132, ¶ 23, 311 P.3d 170, 176 (Wyo. 2013). "[T]he weight to be given to the child's preference will depend on age, reason for the preference, the relative fitness of the parents, the hostility, if any, of the child to the non-preferred parent, the preference of other siblings, and whether the child's preference has been tainted or influenced by one parent against the other." *Id.* "Regarding the children's preferences, the law is clear that a child's custody preference, though not conclusive, is a factor to be given serious consideration, particularly when the child has the age and maturity to plainly express that preference." *Bailey v. Bailey*, 2024 WY 65, ¶ 15, 550 P.3d 537, 544 (Wyo. 2024) (citations omitted).

[¶14] The district court's order in this matter discussed the children's preferences and detailed the court's consideration of those preferences. The district court found:

> [B]oth [AB] and [KB] generally expressed a desire to be able to spend more time with their Father. [AB], perhaps as the older sibling, was more vocal in her desire to do so, noting that her Father has changed for the better during the past few months. For his part, [KB] was more reserved in expressing his desire to spend more time with his Father. Neither child expressed a true hostility toward their Mother or step-father, but [AB] was more emotional when describing some issues she had with Mother.

When discussing whether these preferences constituted a material change in circumstances, the district court held:

> [A]lthough the court has considered the desires of the minor children, at least to the extent it may consider them to determine whether the alleged change in circumstances is material and affects the welfare of the children, it cannot find that any change in circumstances here positively affects the welfare of the children at this time. While the court believes both minor children deeply care for their parents, the court finds it generally agrees with the position of Mother's counsel concerning the children's stated preferences in closing argument: [AB's] testimony was, at times, less than credible, and [KB's] stated preference was not definitive. In short, while the court greatly enjoyed meeting with the minor children and took into account their stated preferences, such preferences do not justify reopening the Decree.

4

[¶15]  The district court spoke extensively with both children and allowed Father's and Mother's respective counsel to question the children.  The district court asked the children about their ages and both children discussed their preferences.  KB stated he would like to see Father more "to help him with stuff," and he would see his grandma more.  When he was asked how much more time he wanted, he stated: "I don't know, just a little bit."  AB stated she wants more time with Father because she gets along better with him, her grades are better, and she feels happier because she is constantly fighting with her mom.  She stated she would like "[p]robably a week on, week off[,] [l]ike, a week with [her] dad, week with [her], mom."

[¶16]  The district court considered the children's current preferences and set forth its reasonings for why those preferences did not justify reopening the custodial order.  The district court's order and interviews of the children demonstrate it carefully weighed the preferences, determined credibility, and came to a reasonable conclusion. *See generally Walker*, 2013 WY 132, ¶¶ 25–31, 311 P.3d at 176–77 (finding based on the transcript of the interview with the child the district court considered the child's preference and its decision of no material change in circumstances despite the child's preference was reasonable).

## B.  Change in Career and Work Schedule

[¶17]  In addition to the children's preferences, Father argued there was a material change in circumstances because he no longer works at the coal mine and instead is self-employed, which allows him more flexibility to spend time with the children.  He claims the trial court minimized the change in his work schedule and his efforts towards improving his relationship with the children.

[¶18]  With respect to Father's work schedule, the district court found:

> Since [Father's] marriage ended in October 2022, [after the filing of Father's petition to modify,] Father appears to have taken more interests and efforts toward improving his relationship with the minor children.  Such efforts, including his interactions with [AB's] school and helping her complete her homework within the few weeks before trial, are strongly encouraged.  Even so, the court remains concerned that Father has not shown stability in such efforts to justify reopening the Decree.

Father filed his petition to modify on November 30, 2021.  He testified he no longer worked for the mine beginning in 2016 and was self-employed.  At the time Father filed his petition he was married, but he subsequently divorced his wife almost a year later, on October 18, 2022.  KB testified Father's house previously had a lot of yelling and fighting, but his house

5

has improved because his wife is no longer there. AB testified living with Father and his ex-wife was chaotic. She stated how she once said her stepfather was more like a father to her, because Father was not spending time with AB and KB during their visits. However, she discussed Father became more attentive after he obtained a divorce. She stated Father is more present and wants to do more things with KB and AB since his divorce. She stated prior to Father's divorce she was unhappy because Father would go to work or do other things that prevented her from getting quality time with him. She stated she thought Father was a liar when he was with his ex-wife, but within the last year "he has definitely stepped up his game and is a real father figure."

[¶19]  AB testified law enforcement was often called to Father's home prior to his divorce. She testified to a time when she was standing in the yard in the middle of the night while law enforcement was at Father's home because Father and his ex-wife were fighting. Mother also testified to this situation. She stated she received a phone call from Father's older son and when she arrived at Father's house, law enforcement was there. She stated the kids were standing in the yard and Father and his ex-wife were in the garage arguing. Father testified life with his ex-wife was sometimes chaotic and included calls to law enforcement. He stated he can better focus on his kids now his ex-wife is gone.

[¶20]  Although Father's work schedule provides him with more flexibility to spend time with the children, the evidence indicates he did not invest that time with his children until more recently. The district court's conclusion regarding Father's career and work schedule was reasonable.

### C. Ability to Co-Parent

[¶21]  As a third argument, Father claims the district court's finding the parties generally have no problems with co-parenting is contrary to the evidence. Father claims Mother is unwilling to co-parent with him, and her controlling behavior is a basis for finding a material change in circumstances. The district court found:

> Even though the Decree was entered in February 2015, the evidence presented showed that, for the most part, the parties have worked well together since that time. While there undoubtedly have been disagreements since 2015, and while the evidence presented shows that certain more recent requests for changing parenting times were not accommodated, nothing has been shown to the court suggesting any possible disagreements were such to warrant reopening the court's custody and visitation order. This is simply not a case where one or both parties absolutely refused to accommodate the other parent, or significantly interfered with the other parent's abilities to parent.

6

[¶22]   Father testified Mother typically initiates what the parties call "family meetings" where both parents sit down and discuss the children and matters of concern involving the children.  At these meetings, Mother and Father discuss and attempt to resolve any issues. Mother testified she shares all information with Father. Father stated before his relationship with his ex-wife, Mother and Father for the most part "were extremely courteous and polite to one another in . . . text messaging."  He further stated Mother responds when he asks her for information.   Although Father and Mother testified to Mother denying extra time outside of the custody order when Father requested to have the children, Father testified Mother let him have both children during her Thanksgiving holiday when his sister-in-law passed away.  Mother further testified that sometimes the parties do not follow the current schedule and have even agreed to alternating weeks with the children throughout the summer.  Mother also testified to circumstances where the parties work together when they need the children picked up later or earlier.  Father discussed a time when AB wanted to come stay with him for a week, and while Mother initially said no, she agreed to AB staying with Father after the parties had a conversation.  This evidence shows Mother and Father cooperate and make the current arrangement work.  It also shows Mother is willing to accommodate some of Father's requests to change the schedule.

[¶23]   Contrary to Father's assertions, the district court considered the preferences of the minor children, the change in Father's work schedule, and his allegations regarding the parties' ability to co-parent.  After considering this evidence, the district court concluded Father failed to establish a material change in circumstances that affected the welfare of the children and justified reopening the custody order.  When reviewing the evidence under our standard of review, the district court's conclusion was reasonable. *See Walker*, 2013 WY 132, ¶¶ 20–31, 311 P.3d at 175–77.  Therefore, the district court did not abuse its discretion when it found no material change in circumstances had occurred.

## II.  Res Judicata

[¶24]   For his last argument, Father claims the district court "took issue with the fact [Father] sought a child support modification several years prior to the instant proceedings, but did not seek a custody modification."  Father claims the district court disregarded evidence because he did not seek a custody modification when he modified child support in approximately 2017.  The district court held:

> Moreover, to the extent this case has [been] open for some time, neither of the parties presented, nor is this court aware, of any case or other law requiring that the passage of time by itself is sufficient to justify reopening a prior custody and visitation decision.  This may be especially so in a case such as this where the party experiencing such a change likely could have modified both the financial obligations and the custody

7

and visitation order of the same case but failed to do so. *See Kappen v. Kappen*, 2015 WY 3, ¶ 12 n.3, 341 P.3d 377, [381] n.3 (Wyo. 2015) (citations omitted).

The district court also found: "At trial, neither party presented much evidence concerning the circumstances from February 2015 (when the Decree was entered) to late November 2021 (when the Petition was filed)."

[¶25]  The record does not support Father's claim.  The record indicates the district court never applied res judicata and it considered all the evidence presented by the parties.  We find no error with the district court's conclusion.

## CONCLUSION

[¶26]  The district court did not abuse its discretion when it determined no material change in circumstances occurred that justified reopening the custodial order to modify child custody.  Affirmed.