# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 44

APRIL TERM, A.D. 2026

April 21, 2026

NURIAN E. DUNCAN

Appellant
(Defendant),

v.

S-25-0261

MICHAEL P. DUNCAN,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Nathaniel S. Hibben, Judge*

*Representing Appellant:*
Nurian E. Duncan, pro se.

*Representing Appellee:*
Michael P. Duncan, pro se.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL, Justice.**

[¶1]    Nurian Duncan (Mother) and Michael Duncan (Father) are divorced.  Under a 2019 custody order, Mother had primary custody of the couple's two daughters.  At the end of 2024, Father filed a petition seeking a modification of custody after Mother kicked the couple's oldest daughter out of her home.  The district court ultimately entered an order modifying custody, visitation, and child support.  Mother appeals.  We affirm.

## ISSUES

[¶2]    Mother presents nine issues.  Mother's issues can be condensed and rephrased into three.

1) Did the district court err by not enforcing its temporary custody orders entered while the case was pending?

2) Did the district court err when it found a material change in circumstances justifying a modification of custody?

3) Did sufficient evidence support the district court's findings that modification would be in the children's best interests?

## FACTS

[¶3]    Mother and Father divorced in 2012 and thereafter engaged in what can be described as continuous custody litigation.  Relevant to this appeal, the parties were under a 2019 custody order that awarded primary custody of the couple's two daughters to Mother and visitation to Father.  On November 23, 2024, Father received a call from his then fifteen-year-old daughter, ID, stating Mother had kicked her out of the house and she needed him to come get her.  Father drove from Colorado, where he lived, to Cheyenne to retrieve ID.  Father found ID and her belongings on the lawn.  Father gathered ID and her belongings and took her back to Colorado with him, stopping by the Cheyenne Police Department to inform them he was taking ID.  Father did so given the long contentious nature of the couple's custody disputes.

[¶4]    On November 26, 2024, Mother attempted to have visitation with ID in Colorado.  An argument ensued and Mother called the police.  At that time, ID indicated she wanted to stay with Father and work on her relationship with Mother.  The police officers took no action and Mother left.  Thereafter, Father tried to enroll ID in school in Colorado, but Mother objected and demanded ID be returned to Cheyenne.  Father filed a motion for temporary custody to allow him to enroll ID in school immediately and a motion to modify the custody arrangement on a permanent basis.  Before a hearing on the motion for temporary custody could be held, Father returned ID to Mother for a visitation for

1

Christmas because ID wanted to spend time with her older stepbrother who was on leave from the military. Following this visitation, Mother would not let ID leave with Father.

[¶5] In early January, the district court held a hearing on the motion for temporary custody and Mother's motion for an order to show cause filed against Father for keeping ID in Colorado. The court found the motion for temporary custody was moot since ID was now back in Mother's custody and denied Mother's motion for an order to show cause. The court ordered the parties to maintain their current custody arrangements until it could take up the motion to modify custody.

[¶6] Unfortunately, immediately after that hearing, ID again called Father and asserted additional problems with Mother. ID now detailed Mother's conduct in not letting her leave after the Christmas visitation which included a physical altercation with Mother. Following the call, and after talking to Mother's adult son who corroborated ID's account, Father again picked up ID, filed a police report, and took her to Colorado. Father also picked up Mother's adult son because Mother kicked him out for helping ID return to Father.

[¶7] Because he had ID in Colorado again, Father filed a second emergency motion for temporary custody. After a hearing on the matter, the court granted Father temporary custody of ID which allowed Father to enroll ID in school in Colorado. The court ordered phone visitation for Mother. The court maintained the custody arrangements for the couple's younger daughter, ED. The court also ordered Father to find a GAL to represent the daughters' interests and make recommendations for the pending motion for a custody modification.

[¶8] Father hired a GAL to evaluate the situation and make recommendations. The GAL quickly recommended counseling for ID. But conflict continued between the parents on various topics including the parameters of Mother's phone visitation and obtaining permission from Mother to place ID in therapy. Accordingly, the GAL made a motion to clarify the court's temporary order and address additional conditions regarding the temporary custody order. The district court held a hearing where, among other things, the district court heard about conflict regarding Mother's excessive and late-night phone calls which escalated to Mother again calling law enforcement to Father's home. The court ordered the parties not to interfere with counseling, set a phone visitation schedule, and ordered physical visitation for Mother in addition to the ordered phone visitation. The court ordered ID to remain in Father's primary custody and ED in Mother's so each daughter could finish the school year where they were currently enrolled.

[¶9] A few months later, the district court held a hearing on Father's motion to modify custody. Mother appeared with an attorney, Father appeared pro se. The GAL also appeared and participated. The court heard from both daughters, Mother, Father, the GAL, and two other witnesses. The hearing focused on the events leading to ID's removal from

Mother's home in November 2024, the altercation following the Christmas visit, and other instances of conflict and events since ID's removal from the home. Both daughters expressed their preference to live with Mother. The GAL provided a detailed report which included his observations and findings after interviewing the relevant parties, an analysis of the best interest factors set out in Wyo. Stat. Ann. § 20-2-201, and a recommendation custody be modified to give primary custody to Father.

[¶10] The district court ultimately found a material change in circumstances which justified a custody modification in the form of a deteriorating relationship and ID's November removal from Mother's home. Accepting the GAL's recommendation, the court modified custody to order primary custody of both daughters to Father with liberal visitation for Mother.

## DISCUSSION

[¶11] At the outset, we note Mother's brief does not comply with the rules of appellate procedure. Among other things, Rule 7.01(g) of the Wyoming Rules of Appellate Procedure requires the appellant's brief to include an argument setting forth her contentions with citations to the pages of the designated record on appeal. W.R.A.P. 7.01(g). Mother's brief contained no citations to the record. "We apply strict standards to formal pleadings drafted by attorneys but afford pro se parties some leniency in their filings." *Adams v. Gallegos*, 2025 WY 71, ¶ 7, 571 P.3d 337, 338 (Wyo. 2025) (citing *Hodson v. Sturgeon*, 2017 WY 150, ¶ 3, 406 P.3d 1264, 1265 (Wyo. 2017)). Even so, pro se parties must reasonably adhere to the procedural rules and requirements of this Court. *Id.* Mother has not, and her deficiencies have made reviewing this case extremely difficult and impractical.

[¶12] More problematically, in addition to her failure to cite to the record, most of Mother's arguments are not supported by cogent argument or citation to relevant legal authority. Although Mother included a list including two statutes, a constitutional provision, and a rule of civil procedure at the end of her argument, these citations were not developed into cogent arguments that can be addressed by this Court. The actual portion of her brief where she argued her contentions did not contain the authorities she listed at the end, nor did it contain citations to any other relevant legal authorities to support her contentions. The argument portion of her brief was generally a list of her disagreements with the district court's actions and rulings. Despite our best efforts, it is nearly impossible to find a legal analysis upon which Mother bases her arguments.

[¶13] The longstanding rule of this Court is to summarily affirm "cases or issues in cases that are not presented with cogent argument or pertinent authority." *Adams*, ¶ 13, 571 P.3d at 339 (citing *In Int. of BFW*, 2017 WY 64, ¶ 5, 395 P.3d 184, 185 (Wyo. 2017)). When a brief contains no cogent argument or pertinent authority, we have consistently refused to consider the arguments, whether the brief is filed by a pro se litigant or filed by counsel. *Id.* (citing *McInerney v. Kramer*, 2023 WY 108, ¶ 9, 537 P.3d 1146, 1148 (Wyo. 2023)).

Thus, we do not consider most of Mother's asserted disagreements with the actions of the district court.

[¶14]   However, as the district court noted, the continual custody litigation regarding these two children has been on-going for nearly thirteen years because of perpetual tension between the parents and a general refusal to effectively co-parent.  This benefits no one, especially the children.  Thus, in an effort to hopefully bring an end to the continual litigation and excessive filings by the parties in both the district court and now this Court,[1] we will provide a brief review of the final modification order.[2]  In doing so, we conclude the district court did not abuse its discretion in finding a change in circumstances justified a modification of the custody order or ordering a new custody arrangement.

[¶15]   "We review district court rulings on child custody modifications for abuse of discretion."  *Cornell v. Mecartney*, 2025 WY 97, ¶ 15, 575 P.3d 349, 353 (Wyo. 2025) (quoting *Brinda v. Walker*, 2025 WY 10, ¶ 8, 562 P.3d 841, 844 (Wyo. 2025)).  We uphold modification decisions absent an abuse of discretion or violation of a legal principle.  *Id.* "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously."  *Id.* (citing *Mecartney v. Mecartney*, 2021 WY 141, ¶ 15, 501 P.3d 197, 202 (Wyo. 2021)).  "A court abuses its discretion if it acts 'in a manner which exceeds the bounds of reason under the circumstances.'"  *Id.* (quoting *Gardels v. Bowling*, 2023 WY 3, ¶ 7, 522 P.3d 1047, 1052 (Wyo. 2023)).

[¶16]   Whether there has been a material change in circumstances justifying a custody modification is principally a factual determination to which we accord great deference. *Cornell*, ¶ 16, 575 P.3d at 353 (citing *Kappen v. Kappen*, 2015 WY 3, ¶ 11, 341 P.3d 377, 381 (Wyo. 2015)).  Our goal is to determine "whether the district court's decision is reasonable."  *Id.* (quoting *Smith v. Kelly*, 2019 WY 60, ¶ 20, 442 P.3d 297, 301 (Wyo.

---

[1] In addition to the appellate briefs, this Court has received: Appellant's Motion to Supplement the Record with Pleadings from Related Civil Filings; Appellee's Motion for Sanctions and Allowable Costs Under WRAP 10.05(b); Appellant's Motion to Accept Filing and Take Notice of Service Difficulties and Related District Court Proceedings; Appellee's Notice of Nonresponse and Renewed Request for Sanctions Under WRAP 10.05(b), Statement of Extraordinary Burden, and Request for Immediate Ruling; Appellant's Response to Appellee's Motion for Sanctions Under WRAP 10.05(b); Appellant's Response to Appellee's Notice of Nonresponse and Renewed Request for Sanctions Under WRAP 10.05(b); Appellant's Notice Regarding Incomplete Record and Missing Transcripts and Designation of Record; and Appellant's Notice Regarding Discrepancies Between Designation of the Record and Record as Transmitted.

[2] Because Mother has presented no cogent argument or relevant legal authority regarding any of the court's pre-trial or other orders, we do not review them.  Even if we were to look at them, any ruling we make about temporary orders and interim rulings would have no impact on Mother and Father now that the court has issued its final order.  *See Walsh v. Smith*, 2020 WY 25, ¶ 11, 458 P.3d 58, 63–64 (Wyo. 2020).

4

2019)).  "When considering whether the decision was reasonable, we view the evidence 'in the light most favorable to the district court's decision, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.'"  *Id.* (quoting *Kelly v. Kelly*, 2023 WY 48, ¶ 11, 529 P.3d 494, 497–98 (Wyo. 2023)).

[¶17]  In order to make a custody modification, the district court must first find there has been a material change in circumstances since the time the controlling custody order was entered.  *Cornell*, ¶ 18, 575 P.3d at 354 (citing *Jacobson v. Kidd*, 2018 WY 108, ¶ 16, 426 P.3d 813, 820 (Wyo. 2018); *Meehan-Greer v. Greer*, 2018 WY 39, ¶ 17, 415 P.3d 274, 279–80 (Wyo. 2018)).  "A determination that circumstances have materially changed is governed . . . by an evaluation of the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered."  *Id.* (quoting *In re TLJ*, 2006 WY 28, ¶ 10, 129 P.3d 874, 877 (Wyo. 2006)).  To justify modifying custody, the change must affect the welfare of the children.  *Id.* ¶ 19 (citing *Kappen*, ¶ 15, 341 P.3d at 382).  If the district court finds there has been a material change in circumstances, it then must determine, "based on the totality of the evidence, whether modification of the custody or visitation order would be in the child's best interests."  *Brinda*, ¶ 10, 562 P.3d at 845 (quoting *Kelly*, ¶ 12, 529 P.3d at 498).

[¶18]  "Each case requires the district court to carefully weigh the relevant factors while looking to the unique and individual family relationships in reaching a resolution that is in the best interests of the children in that family."  *Jackson v. Jackson*, 2004 WY 99, ¶ 16, 96 P.3d 21, 27 (Wyo. 2004) (citing *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998)).  In this case, the district court held a bench trial and took evidence from the parties and the GAL.  Viewing the evidence in the light most favorable to Father, as we are required to do by our standard of review, the evidence included:

- Mother kicked ID out of the house and placed her belongings on the lawn. Mother then refused to cooperate in getting ID enrolled in school in Colorado.

- After ID returned to Mother's home for a Christmas visit, Mother refused to let her return to Father's care and had a physical altercation with ID.  Mother viewed her older son assisting ID in returning to Father's care as a "betrayal."  Mother's son sought refuge with Father because Mother kicked him out and he had nowhere to stay while he was on leave.  ID and Mother's son made a police report which confirmed marks on ID's body from the scuffle with Mother.

- Mother interfered with ID seeing a counselor while the case was pending.

- When Mother was limited to only phone visitation, her phone calls were excessive and led to ID disobeying Father's rules about late night phone calls.  This further

5

caused Father to unplug the wi-fi to cut off calls. Mother then called law enforcement on Father to have them visit Father's home late at night.

- Mother was hyper-critical of Father and ID began repeating the same criticism of Father.

- ID was modeling Mother's volatile behavior and kicked ED out of the car on I-25 and left her on the side of a busy interstate highway.[3] ID believed it was acceptable to kick her sister out of the car.

- Mother shuns and kicks her children out of the home when she believes they "betray" her.

- Father was working to improve his parenting methods, Mother was not.

- One of the daughters found the whole situation weird, different, and "a lot," essentially chaotic.

- Father, much like Mother, needed to further improve as a parent. Father, however, had made efforts to improve as a parent including reading parenting books and implementing their suggested strategies to try to improve the stability and reliability of his home.

[¶19]   This is not to suggest there was not favorable testimony presented to the district court on Mother's behalf. However, as noted above, our standard of review does not permit us to look at the evidence in the light most favorable to Mother. Instead, "[o]ur review entails evaluating the sufficiency of the evidence to support the trial court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." *Gray v. Pavey*, 2007 WY 84, ¶ 12, 158 P.3d 667, 669 (Wyo. 2007) (quoting *Pace v. Pace*, 2001 WY 43, ¶ 10, 22 P.3d 861, 865 (Wyo. 2001)).

[¶20]   Considering the evidence, the court first found a material change in circumstances that justified a modification in custody. It found ID's removal from Mother's home in November of 2024 and a deteriorating relationship constituted a material change of circumstances. The evidence detailed above, viewed in the light most favorable to Father, is sufficient to find a material change in circumstances that impacted the children's lives. ID's removal from Mother's home, which precipitated the events that followed, created a situation that was harmful to her daughters in the moment and continued to be harmful. We have previously explained a parent's controlling behavior and efforts to interfere with or undermine the other parent's relationship with the child can support a finding of a

---

[3] Fortunately, Father's wife was following some distance behind and was able to pick up ED.

material change of circumstances and such behavior is contrary to the children's welfare. *Gardels*, ¶11, 522 P.3d at 1053 (citing *Bishop*, ¶ 19, 404 P.3d at 1176). Our review of the record discloses the district court engaged in a thoughtful analysis, and the district court's decision does not exceed the bounds of reason. Thus, we find no abuse of discretion in its conclusion that a material change in circumstances had occurred.

[¶21] The district court next performed the second step of the analysis, whether a modification would be in the best interests of the children. In that regard, in relevant part, Wyo. Stat. Ann. § 20-2-201 provides:

> In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>
> (i)     The quality of the relationship each child has with each parent;
>
> (ii)    The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>
> (iii)   The relative competency and fitness of each parent;
>
> (iv)    Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>
> (v)     How the parents and each child can best maintain and strengthen a relationship with each other;
>
> (vi)    How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
>
> (vii)   The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
>
> (viii)  Geographic distance between the parents' residences;
>
> (ix)    The current physical and mental ability of each parent to care for each child;
>
> (x)     Whether either parent has a conviction for which the parent must register as a sex offender under W.S. 7-19-301 through 7-19-310;

(xi) Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20-2-201(a). The record shows the district court considered these factors.

[¶22] In weighing the factors, the district court relied on and adopted the GAL's report which also assessed the best interest factors as part of its recommendation. It was not error for the district court to do so—the GAL's report was thorough and well-reasoned. The court found nearly all the factors disfavored placement with Mother. Given the evidence detailed above, this was not unreasonable.

[¶23] To the extent she makes any cogent argument, Mother essentially asks us to reweigh the evidence and negate each factor the district court found weighed against her and place more emphasis on her daughters' wishes to return to her. Our standard of review precludes this. *Amadio v. Amadio*, 2025 WY 21, ¶ 24, 564 P.3d 259, 267 (Wyo. 2025) (citing *Vassilopoulos v. Vassilopoulos*, 2024 WY 87, ¶ 7, 557 P.3d 725, 729 (Wyo. 2024)). We do not reweigh evidence. The district court exercised its discretion to weigh the evidence and assess the factors, and the district court is in a much better position than we are to do so because it can judge the credibility of the witnesses. *Jackson*, ¶ 12, 96 P.3d at 26.

[¶24] The district court's reasoning is adequately reflected in the record and not unreasonable. The court acknowledged and considered the daughters' preference to return to Mother's primary custody but found other factors outweighed that preference. A balancing of all the factors indicated that placing the daughters in Father's primary custody was in their best interests. Overall, the court found that although Mother has been a devoted, kind, loving mother, her weaknesses as a parent are not in the best interests of her daughters. The district court's conclusion does not exceed the bounds of reason. Therefore, the district court's decision to modify custody giving primary custody to Father was not an abuse of discretion.

[¶25] In summary, "the district court was presented with the difficult task of determining which custodial arrangement was in the best interests of [the children]. It heard evidence favorable and unfavorable to both parents."[4] *Gray*, ¶ 14, 158 P.3d at 669. After considering all the evidence before it, the district court determined Father is better able to provide an environment which is stable, loving, and reliable. "Stability is of the 'utmost importance to [a] child's well-being.'" *Gardels*, ¶ 15, 522 P.3d at 1054 (quoting *Womack v. Swan*, 2018 WY 27, ¶ 14, 413 P.3d 127, 134 (Wyo. 2018)). Sufficient evidence exists

---

[4] In that regard, the district court noted both parents need to do better and find a way to not continuously be in court thirteen years after they were divorced. We agree. Even though custody was placed with Father, both parents need to continue to do better for their daughters.

in the record to support the court's decision, and the decision is not unreasonable. We, therefore, hold the district court did not abuse its discretion in this matter.

[¶26] We last note Father has filed a motion for attorney's fees and costs. Father appeared pro se, so he did not incur attorney's fees. However, because we have affirmed the district court's decision, Father is entitled to costs in accordance with W.R.A.P. 10.05(a).

## CONCLUSION

[¶27] We affirm.