# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 45

APRIL TERM, A.D. 2016

April 19, 2016

JR,

Appellant
(Respondent),

v.

S-15-0215

TLW,

Appellee
(Petitioner).

*Appeal from the District Court of Teton County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*

Melissa M. Owens of Owens Law Office, PC, Jackson, WY and Heather Noble, Jackson, WY.

*Representing Appellee:*

Leah K. Corrigan of Western Wyoming Law, LLC, Jackson, WY.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Appellant (Mother) challenges a district court's order awarding Appellee (Father) primary custody of the parties' children.  We will affirm the district court.

## ISSUE

[¶2]    Mother presents one issue, with three subsections, for our review:

> 1. The district court abused its discretion in awarding custody to Father.
>
>> a. The district court erred in failing to consider – but apparently overruling the minor children's preference – particularly as the district court did not have sufficient basis for assessing how much weight to give that preference.
>>
>> b. The district court had an insufficient basis for deviating from the recommendation of the Guardian Ad Litem.
>>
>> c. The district court had an insufficient basis for granting residential custody to Father after the minor children had been living in Mother's temporary custody in Bozeman for eighteen months.

## FACTS

[¶3]    Mother and Father were never married but they dated and were living together when their two children were born in 2004 and 2006.  Their relationship ended in 2008, but for the most part they shared custody of their children.

[¶4]    This matter began in September of 2013, when Father filed a petition to establish paternity, custody, visitation, and support, after he learned that Mother planned to move from Jackson, Wyoming to Bozeman, Montana with the children.  A temporary custody hearing was held on November 1, 2013, after which the court awarded the parties joint legal custody with temporary residential custody being awarded to Mother.  Accordingly, Mother and the two children moved to Bozeman in December of 2013, and Father remained in Jackson.

1

[¶5] Almost one year later, in October of 2014, the court held a bench trial to determine custody. The children did not testify and were not interviewed. The court heard testimony from both parties. Testimony also included that from a Guardian Ad Litem (GAL). Ultimately, the GAL recommended that Mother have primary custody. Despite that recommendation, the court awarded Father primary residential custody, subject to Mother's visitation.

## STANDARD OF REVIEW

[¶6] This Court reviews district court decisions affecting child custody and visitation for an abuse of discretion. *Demers v. Nicks*, 2016 WY 13, 366 P.3d 977 (Wyo. 2016). About custody matters we have further said:

> It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.
>
> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*IC v. DW*, 2015 WY 135, ¶ 7, 360 P.3d 999, 1001 (Wyo. 2015) (quoting *Stevens v. Stevens*, 2014 WY 23, ¶ 8, 318 P.3d 802, 805-06 (Wyo. 2014)).

## DISCUSSION

[¶7] In Mother's only issue she argues that the district court abused its discretion when it awarded Father primary residential custody. Mother more specifically argues that the court did not consider the children's preferences, that the court did not have a sufficient basis for its deviation from the GAL's recommendation, and that the court lacked a basis

for granting custody to Father after the children had lived with Mother in Bozeman for 18 months.

[¶8] The district court detailed its reasoning for granting Father primary custody in a 25-page order. Part of its reasoning reads as follows:

> 39. The testimony in this case, particularly Mother's own testimony, causes the Court serious concerns about the destructive effect of Mother's attitudes towards Father and his parenting. Her communication of those attitudes to the children, however true they may seem to be in her mind, has a deleterious effect upon the children and their resulting relationship with their Father. These attitudes and comments reflect negatively on Mother's judgment as to what is in the best interests of the children. The Court directs the parties to the "Golden Rule" described by Ms. Bjelland and to the parenting covenants described elsewhere in this Order – disparaging a parent in the presence of children does not support the parent-child relationships or the co-parenting relationship.
>
> 40. Based on the testimony and exhibits described in the preceding factor, the Court finds that Mother has difficulty not intruding on Father's parenting. As noted above, Mother testified that her intrusion could, in her opinion, continue as she deemed necessary and that it was appropriate because, in her opinion, she has higher values than Father. Testimony and exhibits admitted at trial also show that Mother has been critical of Father's ability to substitute as a homeschool instructor when the children are in his care. Mother explained in her testimony that she could have been more diplomatic and constructive in her comments regarding Father's homeschool instruction of the children. While she admitted she could have been more diplomatic, there was no indication that type of communication would end. Rather, as noted above, Mother testified that in her opinion her behavior is justified because she has higher standards than Father.
>
> 41. Father asserts that Mother micro-manages his parenting and is intrusive. For example, though an email admitted as a trial exhibit, Mother criticized Father's decision to show the children a "Pirates of the Caribbean" film (he would fast-forward the movie during certain fight scenes). Mother

3

testified at trial that in her opinion the film was inappropriate and simply should not have been viewed by the children. Father points to the exhibits regarding his homeschooling and correction of his lessons. Another exhibit was admitted in which Mother criticized Father's use of bookmarks in books the children are reading. Mother testified that she is harsh in her communications to Father but that it is necessary or Father will not listen to her.

42. Religious differences are an issue between the parents. Mother is a Christian whose beliefs are strong. In testimony during trial, witness DB explained that during their dating relationship, Mother was accepting of his separate faith and belief system that was different than hers and that Mother never criticized his or anyone else's religion. However, he also explained that one basis for their break up was that he wanted his children to explore their own spirituality. He did not feel that exploration could occur if he stayed with Mother because of her strong Christian faith.

43. …The children's counselor in Jackson testified that, in her opinion as a counselor, the children would repeat statements about religion that did not seem to be authentically the children's own. She based her opinion in part on statements made by the children that appeared to be "parroting" negative adult statements about the Jewish religion or favoring the Christian religion, in addition to the children's statements about family finances and marital relationships.

44. In citing examples of Mother's strongly held values, as well as her deeply held opinions about Father's parenting, the Court's intent is not to challenge those fundamental values, or even challenge Mother's opinions about Father. Rather, the issue is highlighted because while those values and opinions may motivate Mother's inappropriate and negative communication to the children regarding Father, the effect is to diminish Father in the children's eyes and harm the parent-child relationship. The Court does not believe expert testimony is necessary to conclude a certain degree of parental alienation is inevitable in the dynamic at play here.

. . . .

4

59. This decision by the Court has not been easy. Indeed, both parents in this case are on positive sides of the ledger with respect to most of the factors considered. Both parents are good parents. The parents are <u>not</u> good co parents, and Mother has particular difficulty in performing a healthy co parent role. The Court has repeatedly reviewed and considered evidence and testimony in relation to each factor. The Court finds that on balance and after much deliberation, the statutory factors weigh in favor of Father for primary residential custody. [Underline in original.]

60. Mother's apparent attitude of superiority vis-à-vis Father, her negative attitude toward Father that she openly communicates to the children, her inability to allow Father to parent without her invasion, and her difficulty in respecting and supporting his role as Father to the children, causes the Court serious concern. Mother gave the Court no reason to believe these behaviors are likely to change. These behaviors are not in the children's best interest.

61. The children's needs are well served by implementing a custodial situation that optimizes the likelihood that love and respect for each parent is encouraged and supported. That can more readily occur if Father is the primary custodian. Father's more open co-parenting style and less judgmental attitudes with respect to Mother creates an environment that is likely to foster a more positive co-parenting relationship and a better overall relationship between the children and each parent. This best serves the welfare of the children and should help strike a more reasonable balance of the rights and affections of each of the parents.

[¶9] Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2013) lists ten statutory factors that a district court must consider when determining the best interests of the children in a custody case. Those factors are:

(i) The quality of the relationship each child has with each parent;
(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
(iii) The relative competency and fitness of each

parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

[¶10]  In this case, the court decided that seven of the above factors were neutral in that they favored neither parent.  However, the remaining three factors favored Father in the court's opinion.  According to the district court, those factors weighing conclusively in Father's favor were:

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) the ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy[.]

We said in *Blakely v. Blakely*, 2009 WY 127*, ¶* 11, 218 P.3d 253, 256 (Wyo. 2009), that "no single factor is determinative.  …  In fact, depending on the case, different factors will present a greater need for emphasis."  Regarding custody determinations, we have also said:

"The law affords wide discretion to the district court when fashioning custody and visitation provisions for the best

6

interests of the children." *Pace* [*v. Pace*], [2001 WY 43,] ¶ 11, 22 P.3d [861,] 865 [(Wyo.2001)] (quoting *Reavis* [*v. Reavis*], 955 P.2d [428,] 431 [(Wyo.1998)]). Such discretion "encompasses one of the most difficult and demanding tasks assigned to a trial judge." *Reavis*, 955 P.2d at 431. "Ultimately, the 'goal to be achieved is a reasonable balance of the rights and affections of each of the parents with paramount consideration being given to the welfare and needs of the children.'" *Pace*, ¶ 11, 22 P.3d at 865 (quoting *Leitner* [*v. Lonabaugh*], 402 P.2d [713,] 720 [(Wyo.1965)]).

*Dahlke v. Dahlke*, 2015 WY 76, ¶ 14, 351 P.3d 937, 941 (Wyo. 2015) (quoting *Zupan v. Zupan*, 2010 WY 59, ¶ 13, 230 P.3d 329, 333 (Wyo. 2010)). With the foregoing in mind, we turn to Mother's arguments.

***Children's Preference***

[¶11] Mother first argues that the district court erred in failing to consider the children's preference to live with Mother. We find no abuse of discretion.

[¶12] A child's custody preference, though not conclusive, is a factor that should be given serious consideration in determining custody. *Dahlke*, ¶ 18, 351 P.3d at 942. About a child's preference in custody matters, we have very recently stated as follows:

> We have long held that "the preference of a child of sufficient age and maturity is a factor to be considered by a court in ascertaining what is in the child's best interests." *Love v. Love*, 851 P.2d 1283, 1289-90 (Wyo.1993) (quoting *Roberts v. Vilos*, 776 P.2d 216, 218 (Wyo.1989)). We have identified several factors to consider in weighing a child's custodial preference:
>
> > [T]he age of the child; the reason for the preference; the relative fitness of the preferred and non-preferred parent; the hostility, if any, of the child to the non-preferred parent; the preference of other siblings; and whether the child's preference has been tainted or influenced by one parent against the other.
>
> *Roberts*, 776 P.2d at 219. "In addition, the preference which has a stated basis and is expressed in a plain manner should be accorded greater weight than one whose basis cannot be described." *Id.* at 218-19.

7

. . . While it is true that a child's preference is only one factor to consider, and that it cannot form the sole basis for a custody determination, a child's preference should be seriously considered when the child is of an appropriate age and maturity to assert such a preference. *Love*, 851 P.2d at 1291; *Mulkey-Yelverton v. Blevins*, 884 P.2d 41, 44 (Wyo.1994) ("A child's unequivocal preference to live with a particular parent is a factor to be considered, but the expression of a preference is not conclusive.").

Courts have relied on children's preferences in granting custody where they were found to be "bright, communicative, understanding, and mature for their age," and the decision was "well-reasoned" and "not the product of coaching." *Hansen v. Hansen*, 327 N.W.2d 47, 49 (S.D.1982). We agree that the "welfare of the children * * * is not being served if their wishes are not considered by the trial court." *In re Marriage of Kramer*, 177 Mont. 61, 580 P.2d 439, 444 (1978). *See also, In re Custody of Maycelle D.*, 213 Mont. 225, 691 P.2d 410, 412 (1984). Though the child's preference is but one factor to consider, theses wishes should receive "serious consideration." *In re Marriage of Rolfe*, 216 Mont. 39, 699 P.2d 79, 87 (1985).

*Love*, 851 P.2d at 1290-91.

*Dahlke*, ¶¶ 17-18, 351 P.3d at 942.

[¶13] Regarding the children's preferences in this case, the court briefly noted in its final order that Mother believed the children preferred to live with her. However, beyond that, there was no testimony from either child regarding their preferences. They were never interviewed about a preference. Had they testified, their ages - eight and nine at the time of trial - do not provide significant weight. "The older a child becomes, greater weight should be given his preference." *Love v. Love*, 851 P.2d 1283, 1289 (Wyo. 1993) (quoting *Yates v. Yates*, 702 P.2d 1252, 1256 (Wyo. 1985)). In fact, this Court has rejected the expressed preference of ten and thirteen-year-old children as a controlling factor in a custody decision. *Curless v. Curless*, 708 P.2d 426, 429 (Wyo. 1985).

[¶14] This Court has recently stated that a party's failure to offer evidence to the district court results in a waiver of any argument regarding the significance of that evidence on

8

appeal.  *Guy-Thomas v. Thomas,* 2015 WY 35, ¶¶ 12-13, 344 P.3d 782, 786 (Wyo. 2015).
There,

> [w]ife's attorney did not attempt to introduce evidence or
> make an offer of proof which would tell us what evidence of
> marital infidelity she would have presented.  If Wife had
> evidence that she wanted to present, her attorney should have
> offered that evidence, and if she was not allowed to present it,
> an offer of proof should have been made so that we would
> know what would have been presented to determine whether
> an error was made.

[¶15]  In this case, Mother did not offer the testimony of her children at trial.  The
children were not interviewed.  The district court had no concrete evidence to consider
regarding the preference of the children.  Thus, we must find that Mother waived this
argument when she failed to put on any direct evidence on her own behalf.

### *GAL's Recommendation*

[¶16]  Mother also argues that the district court had an insufficient basis for deviating
from the recommendation of the GAL.

[¶17]  Regarding the GAL's recommendation, the district court stated:

> 56.  The GAL notes that both children love both parents and
> both parents love their children.  The GAL notes, as does Ms.
> Bjelland, that the parents have a woefully dysfunctional co-
> parenting relationship.  The GAL recommends maintaining
> the status quo, by suggesting primary residential custody
> remain with Mother with liberal visitation with Father.  The
> GAL points to the children's satisfaction with homeschooling
> with Mother and that they are settled in Bozeman in support
> of her recommendation.
>
> 57.  The Court respectfully disagrees with the
> recommendation of the GAL regarding residential custody
> and visitation.  The court recognizes the children are settled in
> Bozeman since temporary residential custody was granted to
> Mother.   However, the Court finds the co-parenting
> difficulties between the parents are worse since the move
> given the distance between homes.  When the parents both
> lived in Jackson and had almost equal time with the children,
> the relationships between the children and each parent could

be maintained more easily and continue to grow despite any disparaging remarks and co-parenting difficulties between parents. The key factor for the Court is that Mother, as residential custodian, freely communicates with the children in a disparaging manner about Father. Father is handicapped in attenuating that prejudice because of his limited contact with the children as the non-custodial parent. Based on Mother's testimony, there is little reason to believe that paradigm will change if Mother remains as the primary custodian. The Court finds that certain factors weigh in favor of Father – how parents and child can maintain and strengthen relationships with each other; how the parents and child interact and communicate and how such may be improved; and the ability and willingness of each parent to allow the other to parent without intrusion, Wyo. Stat. § 20-2-201(a)(v)-(vii). The Court finds that Father's parenting style is less intrusive, and more respectful of Mother's parenting, which is conducive to maintaining and strengthening the children's relationship and communication with both parents over time and the geographic distance between homes.

58. Although Mother testified that she believed the children preferred to live with her and would not like moving back to Jackson, she also believes that both children are resilient. Mother also testified that she takes the children's opinion into account but that they are too young to decide what is in their best interests. The court cites this testimony as credible evidence from the current primary residential caregiver that the two children are resilient and have the capacity to healthily adjust to a change in primary custody. No other evidence was admitted to suggest that the children have special needs that could impact either child's adjustment to their former home in Jackson.

[¶18] A court is not required to accept the recommendations of a GAL. *FFJ v. ST*, 2015 WY 69, ¶ 21, 348 P.3d 415, 421-422 (Wyo. 2015) (citing *Olsen v. Olsen*, 2013 WY 115, ¶ 22, 310 P.3d 888, 894 (Wyo. 2013)). Also, "[o]ur rule is that the credibility of witnesses, the weight of the evidence, and conflicts in the evidence must be resolved by the finder of fact[.]" *Montee v. State*, 2013 WY 74, ¶ 23, 303 P.3d 362, 367 (Wyo. 2013) (quoting *Aden v. State*, 717 P.2d 326, 328 (Wyo. 1986)). The district court explained in detail its reasoning in rejecting the GAL's recommendation -- because of the parties' ultimate lack of cooperation. We find no abuse of discretion.

*Change of Custody from Temporary with Mother to Permanent with Father*

[¶19] Finally, Mother argues that the district court erred when it changed temporary custody from Mother to permanent custody with Father. Unfortunately for Mother, this is entirely within the district court's prerogative and the ultimate point of a custody determination involving a temporary order.

[¶20] The court recognized that Mother had been the primary residential custodian since the court entered a temporary custody order. The court stated, however, that

> "… Temporary Custody Orders are temporary and do not conclusively affect the ultimate custody determination in this or any other child custody action. The award of temporary custody cannot be a controlling factor to the exclusion of the other statutory factors, particularly not where custody was award in a temporary custody hearing, which is an expedited proceeding without the benefit of all trial procedures, preparations, and evidence."

The court also noted that prior to that order, the couple shared "approximately equal residential custody time." Pointedly, the court continued:

> The Court has given great consideration to the Mother's role as temporary primary caregiver and as the children's homeschool instructor. However, in light of Mother's claim to values superior than those of Father, her reluctance to foster a positive relationship between Father and the children by openly disparaging Father to the children, and her inability to respect Father's rights and responsibilities as a parent without intrusion, Mother's role as the ongoing primary caregiver is not in the children's best interests. Mother's status as the past primary caregiver is not the controlling factor in this case.

[¶21] It was entirely within the court's prerogative to award primary residential custody to Father, and we find no abuse of discretion.

## CONCLUSION

[¶22] The district court did not abuse its discretion when it awarded Father primary custody of the parties' children. The district court is affirmed.