# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 97

APRIL TERM, A.D. 2025

September 3, 2025

KELLY CORNELL f/k/a KELLY CORNELL MECARTNEY,

Appellant
(Petitioner),

v.

DAVID LAURENCE MECARTNEY,

Appellee
(Respondent).

S-25-0013

*Appeal from the District Court of Teton County*
*The Honorable Kate G. McKay, Judge*

*Representing Appellant:*
Letitia C. Abromats, Letitia C. Abromats, P.C., Greybull, Wyoming.

*Representing Appellee:*
Alexandra Mijares Nash, DeFazio Law Offices, LLC, Jackson, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**Hill, Justice.**

[¶1]    Kelly Cornell (Mother) and David Mecartney (Father) divorced in 2021.    In November of 2023, Mother filed a petition to modify custody, visitation, and child support. The district court denied the petition finding no material change of circumstances; and therefore, the court did not have jurisdiction to order modification.    Mother appeals. Finding no abuse of discretion, we affirm.

## ISSUES

[¶2]    Mother presents one issue which we rephrase as follows:

> Did the district court abuse its discretion when it found Mother did not demonstrate a material change of circumstances affecting the child's welfare?

## FACTS

[¶3]    This case in its entirety has a long history with complex facts and multiple divorce decrees and custody orders.  We will summarize only the history and facts relevant to the matter at hand—the denial of Mother's petition for modification of custody, visitation, and support.  This court summarized the facts related to the original divorce decree and custody orders in *Mecartney v. Mecartney,* 2021 WY 141, 501 P.3d 197 (Wyo. 2021) (*Mecartney 1*).  To the extent those facts are relevant, we will discuss them as needed.

[¶4]    When the parties divorced, the district court entered separate divorce decrees governing different aspects of the divorce.  Important for this case, the court entered an order determining custody (Custody Order) and a Visitation and Transition Order (Visitation Order).  Together these orders granted Mother primary custody of the couple's minor child, DM, and ordered a 15-month transition period to shared custody which required significant reunification therapy for Father and DM.  The Visitation Order intended shared custody to be achieved by June of 2022.  Shared custody was never realized, and DM remains in Mother's primary custody.

[¶5]    In March of 2023, the State of Wyoming Child Support Services filed a petition to modify child support.  The petition alleged changes in Father's income would result in a 20% change in child support.  The parties stipulated to a temporary order which increased Father's support obligation from $11,456.42 to $18,519.39 monthly.    The original $11,456.42 monthly amount was based on a basic custody calculation when Mother had primary custody of DM.  The new stipulated $18,519.39 amount was based on the shared custody contemplated in the Custody Order.

1

[¶6]   In November 2023, Mother filed her petition to modify custody, visitation, and support asserting a material change in circumstances.  She alleged that Father had abandoned his efforts to communicate with DM or transition to shared custody and, because he is a full-time resident of Arizona, shared custody was not feasible.  During the proceedings, Mother argued the court was required to modify the Custody Order to reflect the actual custody circumstances, which are that Mother has primary custody.

[¶7]   With her requested change in custody, Mother also sought to modify Father's support obligation.  She sought to have the support calculation reflect her primary custody, not the ordered shared custody.  If Mother's primary custody were recognized, Father's support obligation would be $25,900.23 per month.  Mother requested that amount retroactive to the filing of her petition.

[¶8]   Father denied Mother's factual allegations.  During the proceedings, he argued that because circumstances had not changed since the entry of the original orders, no material change in circumstances had occurred.  Accordingly, he asserted the district court lacked jurisdiction to reopen the Custody Order.

[¶9]   The District Court denied Mother's petition finding Mother did not demonstrate a material change in circumstances impacting the welfare of the child.  The district court found that, in this case, the facts have not changed since the entry of the Custody Order even though the order is not being followed.  The court further reasoned that even if the fact that the order is not being followed constituted a factual change, Mother did not meet her burden of showing the failure to follow the custody order has any impact on DM's welfare.  The court found DM's welfare is unchanged since the time of the divorce proceedings.

[¶10]  The district court explained that before the divorce decree was entered and during the divorce proceedings, Father and DM were estranged.  The court stated:

> At the time of the [divorce] trial, the child was excelling in school, participated in many extracurricular activities, traveled extensively, and was generally healthy, with the exception of his digestive condition and mental health issues challenges related to the divorce.  His emphatic preference was to live with Mother.  He resisted visitation with Father and had refused to participate in any communications with Father since the parties' separation in September 2019.

The transcript of the original divorce proceedings, which was included in the record, supports this assessment.

[¶11]  After the divorce trial, Father and DM attempted visitation.  Those visits were in public places and lasted a few minutes to an hour.  DM did not generally engage in those

visits. He simply showed up and did so wearing a mask, a hat, and sunglasses and took other steps to "protect" himself because he believed both he and Mother had been abused by Father.[1] After consulting with those involved in the transition efforts, including the GAL and DM's therapist, Father decided to leave whether to have visitation up to DM. Visitation, such as it was, stopped after years of effort.

[¶12] Father continues to reach out to DM with texts and calls. Father texts DM one to three times per week. The texts include photos Father sends of things that remind him of DM or things he believes would interest DM. Father extends invitations for DM to join him on vacations. DM receives Father's text messages but refuses to respond. Father also calls on Sunday nights. DM answers the calls but immediately hangs up. He has not spoken directly to Father since September 2019.

[¶13] DM is currently doing well. He excels in academics, participates in skiing, golf, Eagle Scouts, youth group, and other activities. He has friends and is well-liked at school. At the time of the modification trial, he was exploring colleges and thinking about graduation. DM still unequivocally wants to reside with Mother. As he did at the divorce trial, DM asserts he and Mother were abused by Father. At the divorce trial, the court was unpersuaded such abuse occurred. At the modification trial, Mother did not present any new or additional evidence of abuse.

[¶14] Although there was no evidence she interfered with it, Mother generally does not take steps to promote DM and Father's relationship. She does not encourage DM to answer the phone calls or respond to Father, allowing DM to decide how to respond. At the modification trial, Mother described the state of Father and DM's relationship at the time of the Custody Order as "estranged" and testified the relationship had not changed. The parties agreed that custody is the same as it was at and before the divorce trial.

**STANDARD OF REVIEW**

[¶15] "We review district court rulings on child custody modifications for abuse of discretion." *Brinda v. Walker*, 2025 WY 10, ¶ 8, 562 P.3d 841, 844 (Wyo. 2025) (quoting *Kelly v. Kelly*, 2023 WY 48, ¶ 11, 529 P.3d 494, 497 (Wyo. 2023)). We do not overturn modification decisions absent an abuse of discretion or violation of a legal principle. *Id.* (citing *Gardels v. Bowling*, 2023 WY 3, ¶ 7, 522 P.3d 1047, 1052 (Wyo. 2023)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Mecartney 1*, ¶ 15, 501 P.3d at 202 (quoting *Sears v. Sears*, 2021 WY 20, ¶ 13, 479 P.3d 767, 772 (Wyo. 2021)). "A court abuses its discretion if it acts 'in a manner which exceeds the bounds of

---

[1] As we noted in *Mecatney 1*, these claims were generally unsubstantiated. *Mecartney 1*, ¶ 29, 501 P.3d 205.

3

reason under the circumstances.'" *Gardels v. Bowling*, ¶ 7, 522 P.3d at 1052 (quoting *Meehan-Greer v. Greer*, 2018 WY 39, ¶ 14, 415 P.3d 274, 278–79 (Wyo. 2018)).

[¶16] The district court's determination in child custody modifications concerning whether there has been a material change in circumstances is principally a factual determination to which we accord great deference. *Kappen v. Kappen*, 2015 WY 3, ¶ 11, 341 P.3d 377, 381 (Wyo. 2015) (citing *Morris v. Morris*, 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo. 2007)). Our primary goal is to determine "whether the district court's decision is reasonable." *Smith v. Kelly*, 2019 WY 60, ¶ 20, 442 P.3d 297, 301 (Wyo. 2019) (quoting *Kappen*, ¶ 10, 341 P.3d at 381)). When considering whether the decision was reasonable, we view the evidence "in the light most favorable to the district court's decision, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence." *Kelly*, 2023 WY 48, ¶ 11, 529 P.3d at 497–98 (quoting *Taulo-Millar v. Hognason*, 2022 WY 8, ¶ 15, 501 P.3d 1274, 1279 (Wyo. 2022)) (citation modified); *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018).

**DISCUSSION**

[¶17] Under Wyoming statute § 20-2-204(c) a court may "modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children." Wyo. Stat. Ann. § 20-2-204(c). Consequently, courts apply a two-step analysis when considering a petition for a modification of custody or visitation. *Jacobson v. Kidd*, 2018 WY 108, ¶ 16, 426 P.3d 813, 820 (Wyo. 2018).

[¶18] The first step requires proof of a material change in circumstances since the time the controlling custody order was entered. *Jacobson*, ¶ 16, 426 P.3d at 820 (quoting *Bishop v. Bishop*, 2017 WY 130, ¶ 11, 404 P.3d 1170, 1173 (Wyo. 2017)); *Meehan-Greer*, ¶ 17, 415 P.3d at 279–80. A court must make this threshold finding because of the res judicata effect afforded custody orders. *Jacobson*, ¶ 16, 426 P.3d at 820 (quoting *Bishop*, ¶ 11, 404 P.3d at 1173). District courts cannot reopen existing custody orders until the moving party establishes a "material change of circumstances which outweigh society's interest in applying the doctrine of res judicata[.]" *In re TLJ*, 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (quoting *Kreuter v. Kreuter*, 728 P.2d 1129, 1130 (Wyo. 1986)). "A determination that circumstances have materially changed is governed ... by an evaluation of the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered." *In re TLJ*, ¶ 10, 129 P.3d at 877.

[¶19] Additionally, when contemplating whether there is a material change in circumstances, courts must find that the change has, in some way, affected the welfare of the child. *Kappen*, ¶ 15, 341 P.3d at 382 (citing *Hanson v. Belveal*, 2012 WY 98, ¶ 19, 280 P.3d 1186, 1193 (Wyo. 2012); *Morris*, ¶ 6, 170 P.3d at 89; *Jackson v. Jackson*, 2004 WY

4

99, ¶ 8, 96 P.3d 21, 24 (Wyo. 2004); *Fergusson v. Fergusson*, 2002 WY 66, ¶ 9, 45 P.3d 641, 644 (Wyo. 2002); *Cobb v. Cobb*, 2 P.3d 578, 579–80 (Wyo. 2000); *Sorensen v. May*, 944 P.2d 429, 432 (Wyo. 1997); *Yates v. Yates*, 702 P.2d 1252, 1255 (Wyo. 1985)). "It is not enough for a parent seeking a modification to show only that a change has occurred, that parent must also demonstrate that the change holds some relevance in the child's life." *Kappen*, ¶ 15, 341 P.3d at 382 (citing *KES v. CAT*, 2005 WY 29, ¶ 11, 107 P.3d 779, 782 (Wyo. 2005); *JRS v. GMS,* 2004 WY 60, ¶ 10, 90 P.3d 718, 723 (Wyo. 2004)).

[¶20]   Said another way, the moving party must show "that the change is significant ***in relation to*** the modification sought." *Arnott v. Arnott*, 2012 WY 167, ¶ 21, 293 P.3d 440, 450 (Wyo. 2012) (quoting *Stevens v. Collard*, 837 P.2d 593, 596 (Utah App.1992), *cert. denied,* 862 P.2d 1356 (Utah 1993)) (emphasis in original). "A condition which existed when the divorce decree was entered is not a substantial or material change of circumstances that warrants modification of the decree." *Sorensen*, 944 P.2d at 432 (citing *Crawford v. Crawford*, 828 P.2d 1192, 1193 (Wyo. 1992)).

[¶21]   If a material change of circumstances is established, the court then moves to the second step of the analysis, determining whether a modification is in the child's best interests. *Meehan-Greer*, ¶ 25, 415 P.3d at 281 (citing *Jensen v. Milatzo-Jenson*, 2013 WY 27, ¶ 8, 297 P.3d 768, 772 (Wyo. 2013)). The district court cannot consider the best interest factors set forth in Wyo. Stat. Ann. § 20-2-201(a) unless and until it has determined a material change in circumstances has occurred. *In re TLJ*, ¶ 8, 129 P.3d at 876 (quoting *Kreuter*, 728 P.2d at 1130).

[¶22]   In this instance, the district court determined there had been no material change in circumstances and therefore did not move to the second step of the analysis. In doing so, the district court addressed all of Mother's assertions related to the claimed change in circumstances. Mother's claimed change in circumstances were: 1) Mother's relocation from Jackson to Pinedale, 2) Father's relocation to Arizona, 3) Father had abandoned his efforts to have a relationship with DM while she had encouraged the relationship, and 4) Father's failure to pay support in accordance with a basic custody calculation affects DM's welfare. Based on our review of the record and considering the standard of review, we cannot conclude the district court erred.

[¶23]   In this regard, it is initially helpful to recall the circumstances when the district court entered the original Custody Order. The first time this case came before us, we described the facts as "unfortunate" and at times "heart breaking." *Mecartney 1*, ¶¶ 22, 24, 501 P.3d at 204. We noted the district court found that Mother had engaged in inappropriate coparenting conduct from 2017 through 2019. *Id.* ¶ 5, 501 P.3d at 199. Mother waged a war against Father. She interfered with communication between Father and DM; filmed videos of DM disparaging Father and sent them to Father; coached DM in what to say to Father; sent Father numerous texts telling him he will never get custody; and shared the details of the divorce with DM. *Id.* Mother also continuously insisted Father was an

alcoholic and a drug addict despite the lack of any objective evidence to support those claims. *Id.* ¶ 22, 501 P.3d at 204. DM believed Mother's claims on these topics. *Id.* DM also believed both Mother and he had been abused by Father despite any credible evidence supporting those beliefs. *Id.* Mother's efforts led to Father and DM becoming alienated and estranged. *Id.* ¶ 24, 501 P.3d at 204.

[¶24]  As we noted in *Mecartney 1*, one of the district court's original findings in the Custody Order was:

> On one hand, Mother has engaged in hostile and aggressive subversion of the Father-child relationship since the parties separated. She has repeatedly disobeyed court orders. She has demonstrated no consistent ability to coparent, communicate as a coparent, or support coparenting. The court has little optimism that continuing the child's primary residence with Mother will facilitate an appropriate Father-child relationship and a healthy development of the child **without a 180-degree shift in Mother's approach**, and without a set visitation plan with explicit boundaries for the family to follow. The Court believes that Mother has the aptitude to make that 180-degree shift and the ability to abide by the Court's visitation order.
>
> On the other hand, Father has not been the primary caregiver for the child; the child's stability would be better supported by staying with Mother; and, of significant importance, the child emphatically does not want to reside with Father. These factors—stability, primary caregiver, and the child's preferences—determine the outcome of this unfortunate custody contest.

*Id.* ¶ 19, 501 P.3d at 203 (emphasis in original).

[¶25]  The district court's temporary visitation order was designed to start repairing the father-son relationship. But the transition efforts were generally not effective. DM would not meaningfully engage in the visitation and the sessions deteriorated early on. *Id.* ¶¶ 11–12, 501 P.3d at 201. Mother demanded conditions related to the visitation and DM's counseling that made the professionals tasked with facilitating those activities uncomfortable and skeptical of the chances for success in repairing the relationship. *Id.* As noted, Mother was largely successful in her efforts to denigrate Father and to destroy any relationship between DM and Father. *Id.* ¶ 24, 501 P.3d at 204.[2]

[¶26]  Even so, we found the district court did not abuse its discretion in awarding primary custody to Mother with the long transition to shared custody. *Id.* ¶ 31, 501 P.3d at 206. In

---

[2] At least one Indiana court has found a parent may not sow seeds of discord and reap improved custody rights. *Pierce v. Pierce*, 620 N.E.2d 726, 731 (Ind. Ct. App. 1993).

making this difficult choice, the district court considered numerous facts and weighed heavily DM's stability. *Id.* ¶¶ 20–31, 501 P.3d at 203–207. The court was concerned about the possible repercussions to DM's health and welfare from uprooting DM from Mother's primary care to Father's primary care. *Id.* ¶¶ 24–25, 501 P.3d at 204. DM was afraid of Father and did not want to live with him. *Id.* ¶¶ 21–22, 501 P.3d at 203–204. The court was skeptical that the father-son relationship would be repaired. *Id.* ¶ 19, 501 P.3d at 203. However, based on Mother's representations of the changes she made to supporting the father-son relationship, the district court believed there was at least some hope for shared custody. *Id.* All in all, the court considered the best interests of DM and made the challenging decision to keep primary custody with Mother with the long transition to shared custody. *Id.* ¶ 31, 501 P.3d at 206.

[¶27] Considering this background, the district court was now faced with deciding whether there had been a material change in circumstances. The district court held a one-day bench trial to consider Mother's evidence regarding her alleged factual changes and Father's assertions that nothing had changed since the entry of the custody orders. The court heard testimony from Mother, Father, DM, DM's current school principal, DM's teacher and ski coach, DM's former therapist, DM's eagle scout leader, and an accounting expert.

[¶28] Mother first asserted her relocation from Jackson to Pinedale constituted a material change in circumstance. Although a relocation may constitute a material change in circumstances, that is not always the case. A custodial parent's relocation "and factors 'derivative' of that relocation **may** constitute a material change of circumstances." *Kimzey v. Kimzey*, 2020 WY 52, ¶ 31, 461 P.3d 1229, 1239 (Wyo. 2020) (quoting *Arnott*, ¶ 40, 293 P.3d at 458) (emphasis added); *see also Cook v. Moore*, 2015 WY 125, ¶ 8, 357 P.3d 749, 752 (Wyo. 2015). The factors a district court considers include:

> [A] change in the ability of the parties to maintain the existing parenting agreement, a change in the ability of the children to maintain a close relationship with the remaining parent, factors affecting quality of life in the new location, the child's geographic preference, and the relative merits of available social and educational opportunities in the new location. *Cook*, ¶ 10, 357 P.3d at 752 (quoting *Arnott*, ¶ 39, 293 P.3d at 458).
>
> These factors are meant to provide guidance regarding circumstances courts may consider when a party claims a material change in circumstances due to the custodial parent's relocation. *Id.* ¶ 11, 357 P.3d at 752. The court need not address every factor or specifically rule on each factor "as long as there is some indication it considered them." *Kimzey*, ¶ 38, 461 P.3d at 1241; *see also Cook*, ¶¶ 11–12, 357 P.3d at 753.

*Gutierrez v. Bradley*, 2021 WY 139, ¶ 18, 500 P.3d 984, 988–89 (Wyo. 2021).

[¶29] The district court considered these factors, and we agree with its conclusion that "[h]ere no evidence was presented that Mother's move changed the ability of the parties to maintain the existing Custody Orders." Mother moved to Pinedale three years before she filed her petition. The evidence showed DM enjoyed a high quality of life, with numerous opportunities. DM liked living in Pinedale and was largely flourishing.

[¶30] There was likewise no evidence the move itself impacted Father's relationship with DM considering the status of their relationship before and immediately after the divorce. As the district court noted, both parties have substantial resources that allow them to travel frequently and manage a shared custody arrangement from different geological locations (should shared custody be exercised). Thus, in these circumstances, a small move from Jackson to Pinedale is not particularly significant.

[¶31] Applying the *Arnott* factors, the move did not alter the ability of the parties to maintain the parenting arrangement because it was not being followed anyway; change the ability of DM to maintain his relationship with Father because the relationship was already estranged; impact the quality of DM's life; or significantly change the relative merits of DM's available social and educational opportunities. *Arnott*, ¶ 39, 293 P.3d at 458.

[¶32] Second, Mother alleged Father now resides in Arizona. The district court found this position was not addressed in evidence offered by Mother at trial and therefore also found that Father still resides in Jackson. We could not find anything in the record that would cause us to conclude otherwise. The only testimony really touching on this issue was that Father originally objected to Mother's move to Pinedale because he wanted DM to be closer to him in Jackson. Giving every favorable inference to the district court's determination, as the standard of review requires us to do, we find the district court did not err in finding Father still resides in Jackson. *Kelly*, ¶ 11, 529 P.3d at 497–98.

[¶33] Third, Mother alleged Father had abandoned his efforts to pursue visitation. The evidence showed, and it was generally undisputed, that Father no longer **demanded** DM engage in visitation. However, the evidence also showed Father continues to make efforts to be involved in DM's life. He demonstrates regular efforts to communicate with DM through texts and calls. The reality is, shared custody is not taking place because DM does not engage with Father. Father's decision not to demand visitation is based upon his belief, in consultation with others involved in looking after DM's welfare, that allowing DM to decide if he will engage in visitation is better for all parties, especially DM.

[¶34] Mother argues because the Custody Order is not being followed and shared custody is not happening, there is inherently a material change in circumstances. We do not agree. Mother is correct we have held in Wyoming that when both parents inform the court a joint physical custody arrangement is not working, a sufficient change in circumstances justifying the reopening of the custody order exists. *Roemmich v. Roemmich*, 2010 WY

8

115, ¶ 12, 238 P.3d 89, 93 (Wyo. 2010) (citing *Harshberger v. Harshberger*, 2005 WY 99, ¶ 10, 117 P.3d 1244, 1249–1250 (Wyo. 2005); *Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo. 1995)). We have also held that when the parents are unable to make the shared physical custody arrangement work and invite the district court to reopen the original custody order, "a change of circumstances justifying judicial reexamination of the original joint custody order is demonstrated." *Gurney*, 899 P.2d at 55.

[¶35] Those are not, however, the facts and circumstances of this case. Both parents did not agree there had been a material change in circumstances and invite the court to modify the original custody order. *See Johnson v. Clifford*, 2018 WY 59, ¶¶ 14–15, 418 P.3d 819, 824 (Wyo. 2018) (acknowledging a difference when the parties do not agree there is a material change in circumstances). Father vigorously argued there is no material change in circumstances. Additionally, neither party argued shared custody was not working, it simply was not happening. In *Gurney*, the parties agreed shared custody was not working. Here, the parties stipulate shared custody is not being practiced. Father could insist on shared custody, but he does not because he believes it is better for DM not to.

[¶36] More importantly, the evidence showed that the lack of shared custody was not caused by some new and material change in circumstances regarding custody and visitation. Instead, it is caused by DM's choices and the state of Father and DM's relationship which remains as it was since before and immediately after the divorce was finalized. As noted above, district courts are not free to reopen existing custody orders until the moving party establishes a "material change of circumstances which outweigh society's interest in applying the doctrine of res judicata[.]" *In re TLJ*, ¶ 8, 129 P.3d at 876. A determination that circumstances have materially changed is governed by an evaluation of the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered. *In re TLJ*, ¶ 10, 129 P.3d at 877; s*ee also Jackson*, ¶¶ 8–12, 96 P.3d at 24–27; *Thompson v. Thompson*, 824 P.2d 557, 559 (Wyo. 1992). "A material change of circumstance cannot be shown if the situation was contemplated at the time of the divorce." *Meehan-Greer*, ¶ 20, 415 P.3d at 280 (citing *Witowski v. Roosevelt*, 2009 WY 5, ¶ 29, 199 P.3d 1072, 1080 (Wyo. 2009); *Kidd v. Kidd*, 832 P.2d 566, 569 (Wyo. 1992)).

[¶37] Although the district court originally hoped shared custody could be achieved, a damaged father-son relationship existed and was contemplated at the time of the divorce. *Mecartney 1*, ¶ 19, 501 P.3d at 203. The district court may take into account the obvious or natural effects of a situation. *Evans v. Sharpe*, 2023 WY 55, ¶ 28, 530 P.3d 298, 308–309 (Wyo. 2023). The evidence at the modification trial showed minor differences, but the facts generally show the circumstances, and the natural effects of those circumstances, are what they were at the original divorce trial. Father and DM remain estranged just as they were at the time of the divorce trial. DM does not currently want to interact with Father. Significantly, DM's welfare also remains generally unchanged. He is thriving by all accounts.

[¶38]   In making its finding that the circumstances had not changed, the district court noted at the time of the divorce trial Mother was required to make a change but instead she maintained the status quo.  The court found Mother's evidence in no way showed that she did anything to build the relationship between Father and DM.  Mother transported DM to visitation until it was discontinued, and she did not prevent DM from taking Father's calls. DM testified to no other encouragement from Mother.  The district court concluded these circumstances are the same as at the time of the divorce trial, and the trial court predicted they would remain the same absent a significant change and active efforts by Mother.

[¶39]   Mother argues that in making these findings, the district court was requiring more of Mother than was ordered by the original Custody Order, i.e. she now needed to make more efforts to rebuild the father-son relationship.  We do not read the district court's order as Mother does.  The district Court did not say more was required of Mother than originally ordered.  The court was assessing whether things had changed since the original orders as it is required to do when considering a modification.  *In re TLJ*, ¶ 10, 129 P.3d at 877.

[¶40]   Mother is the party that argued the evidence would show she cooperated in building the father-son relationship, presumably to support her assertion that circumstances had changed.  But the evidence did not demonstrate a change in this regard.  Mother did not encourage Father and DM's relationship at the time of the divorce trial, and she does not now.  Much like Father, she lets DM decide for himself the interaction he will have with Father.   The district court could have taken evidence of Mother's purported new encouragement efforts into account to show a material change of circumstances, but the record does not reflect there were such efforts.  *JR v. TLW*, 2016 WY 45, ¶ 6, 371 P.3d 570, 572 (Wyo. 2016) ("An abuse of discretion is present when a material factor deserving significant weight is ignored.").

[¶41]   Although the evidence did not show she actively engaged in thwarting the father-son relationship as she did at times prior to the Custody order, she had largely ceased the more egregious interfering activities by the time of the Custody Order.  *See Mecartney 1*, ¶ 19, 501 P.3d at 203.  Significantly, she presented no evidence she made the 180-degree change the district court originally indicated would be necessary.  *See Id*.  Had she presented evidence of such a change, it would have supported her argument that there had been a material change in circumstances.  *See Jackson*, ¶ 10, 96 P.3d at 25 (finding a district court can consider one parent's significant improvement in finding a material change in circumstances); *Thompson*, 824 P.2d at 559 (same).

[¶42]  This is not to say the evidence showed Mother is not a competent parent.  The evidence showed Mother is nurturing and highly attentive to DM's needs, just as she was at the time of divorce trial.  *See Mecartney 1*, ¶ 26, 501 P.3d at 204.  However, the evidence did not show she expends effort to foster the father-son relationship, just as she did not at the time of the divorce trial.  *See Id.*, ¶¶ 24–30.

[¶43]  Mother's fourth and final assertion was a modification would impact DM's welfare. Leaving the Custody Order in place does not impact DM's welfare.  At this point, given how the parties have governed themselves and the history of custody, what the Custody Order says appears to have no relevance to DM's life.  Simply put, the requested change is not tied to DM's welfare.  To open a custody order, there must be a change that impacts the child's welfare. *Kappen*, ¶ 15, 341 P.3d at 382.

[¶44]  The evidence showed that at the time of the divorce trial, as well as at the modification trial, DM's welfare was generally good, absent the stress related to custody proceedings and his belief he was abused by Father.  DM is in school and excels in his studies; he plays sports; he is likely to be valedictorian of his class; he's looking at colleges; he's physically healthy with the exception of his digestive issues that have existed since childhood and his continued belief he was abused by Father.  He is a mature accomplished young man.  Except for planning for graduation, all of those circumstances were present at the time of the Custody Order.

[¶45]  A case may very well show that non-compliance with the Custody Order constitutes a material change in circumstances sufficient to warrant a modification to the custody order.  This is not that case because the parties' failure to comply with the Custody Order does not have a negative or positive effect on DM's welfare.  In this instance, the non-compliance alone is not enough to establish a material change in circumstance sufficient to warrant opening of the original custody order.  Nothing has materially changed since the original orders; thus, the circumstances do not outweigh society's interest in applying the doctrine of res judicata. *In re TLJ,* ¶ 8, 129 P.3d at 876.

[¶46]  Mother seems to suggest lower child support impact's DM's welfare.  No real evidence was offered to indicate DM's welfare is impacted by financial constraints. Mother made some conclusory statements she and DM had to take fewer vacation trips, but there was also testimony Mother financed many meals and gear for DM's entire ski team because she was in a financial position to do so.  The district court weighed this evidence and reasonably determined it did not constitute a material change in circumstances impacting DM's welfare.  We will not disturb this factual finding on appeal.

[¶47]  Overall, the circumstances alleged to be changed are not new, and the district court did not abuse its discretion in finding there has been no material change in circumstances impacting DM's welfare. *See Willis v. Davis*, 2013 WY 44, ¶ 12, 299 P.3d 88, 92 (Wyo. 2013).  Because there was no material change in circumstances, the district court correctly never moved to step two of the analysis to consider the child's best interests. *See Meehan-Greer*, ¶ 25, 415 P.3d at 281.  The record supports the district court's finding there was not a material change of circumstances and, therefore, the district court did not have jurisdiction to grant a custody modification.

[¶48]   Hence, it follows the district court also did not modify child support.  *Evans*, ¶ 47, 530 P.3d at 313 ("Unsurprisingly, the district court left child support unchanged when it did not modify custody.").  Importantly, Mother's petition was not a petition under Wyo. Stat. Ann. § 20-2-311(a) asserting the child support obligation would change by at least 20%.  Mother's petition was one seeking a modification of child custody based on a material change in circumstances.  Child support was a corollary of the custody issue. Because custody was not changed, it was not error to also leave support unchanged from the parties' stipulation to the State's § 20-2-311 support petition.

## CONCLUSION

[¶49]   The district court did not abuse its discretion when it found Mother did not demonstrate a material change of circumstances affecting the child's welfare.  Affirmed.